BULMAN FURNITURE COMPANY *v.* SCHMUCK.

Opinion delivered November 14, 1927.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE DEFINED.—Contributory negligence is doing something that a person of ordinary prudence would not do, or failing to do something that a person of ordinary prudence would do under the circumstances.

2. NEGLIGENCE—INSTRUCTION AS TO CONTRIBUTORY NEGLIGENCE.—In a suit for damages resulting from a fire caused by a stove installed by defendant, a requested instruction that, if defendant was negligent in putting a stove too near the wall, but if the plaintiffs, or either of them, knew, or in the exercise of ordinary care should have known and appreciated, the danger of using the stove while it was so placed, and continued to use it, they could not recover, *held* correct, and the court's modification that "unless you find that they were assured of its safety by defendant or its agent, and plaintiffs relied on such assurance," *held* error.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.—In a suit for damages resulting from a fire caused by a stove installed by defendant, the question whether plaintiffs, who believed the stove was too near the wall, were guilty of contributory negligence in using the stove, relying on statement of defendant that the stove was safe to use in this position, *held* for the jury.

4. TRIAL—CONFLICTING INSTRUCTIONS.—In a suit for damages resulting from a fire caused by a stove installed by defendant, an instruction in effect that plaintiffs had no right to rely on advice of defendant that the stove was not too near the wall, *held* conflicting with another instruction telling the jury that the plaintiffs could not recover under such circumstances, unless the plaintiffs

were assured of the safety of the stove by defendant, and plaintiffs relied on such assurance.

5. TRIAL—JURY QUESTION.—Wherever a question is such that fairminded men might draw different conclusions, it becomes the duty of the court to submit the question to the jury.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann*, Judge; reversed.

*Downie & Schoggen*, for appellant.

*W. A. Boyd* and *Emerson, Donham & Fulk*, for appellee.

MEHAFFY, J.    The appellees, plaintiffs below, who are husband and wife, filed suit in the Pulaski Circuit Court against the appellant, Bulman Furniture Company, and alleged that they were the owners of lots 13 and 14, block 14, Pfeifer's Addition to the city of Little Rock, Pulaski County, Arkansas, and also owned a dwelling house.

They purchased certain furniture and household goods from the appellant, among which was a gas stove. Defendant installed the stove in the kitchen of said dwelling, and it is alleged that the employees of the Bulman Company negligently and carelessly placed the stove and the pipe used in connection therewith too near to the wall of said kitchen; that plaintiffs objected, when the servant was placing the pipe, but the employee insisted that same was not too close, and that it would be entirely safe. Plaintiffs thereafter called Mr. Bulman, complained to him, and he advised that he would give the matter prompt attention by a competent servant and employee, and, the next day, sent one of its servants to said residence, and this servant stated also that the pipe was not too close, but that he would move it further from the wall, but would not do so until the day following, and that, in the meantime, it would be perfectly safe for plaintiffs to use said stove. That thereafter the walls became ignited on account of the **negligence and** carelessness of appellant's employees in placing the pipe too close to the walls, and said dwelling, furniture and clothing were destroyed by fire. It is alleged that the value of the

building was $1,500 and the furniture and clothing were worth $1,700. They asked judgment therefore for $3,200.

In response to a motion to make the complaint more definite and certain, appellees filed an amendment to their complaint, stating that appellees were husband and wife and that they owned the house and personal property jointly. That an itemized statement of the furniture was attached. That they were unable to itemize their clothing, and attached a list showing other furniture which had been purchased from the appellant, a part of the purchase price of which had not been paid.

Defendants thereafter filed an answer, denying all the material allegations of the complaint.

There was a trial on October 25, 1926, and a verdict against the appellant for $1,733. Motion for new trial was filed, which was by the court overruled, exceptions were saved, and an appeal taken to this court.

Mrs. Schmuck, one of the appellees, testified that she was the wife of A. C. Schmuck; that she and her husband were living together in the house at 5314 A Street at the time of the fire; that her brother-in-law bought the property from Thomas, and they bought it from him; that she put about $400, which she received from her father's estate, into the property; that she and her husband together owned the furniture and clothing, some of which furniture was purchased from the defendant; that they owe a balance on this; that they had bought a gas stove from the appellant for $55; that the stove was set up by appellant's representatives; that the stove was placed in the kitchen; it was set so near the wall that you could barely get your hand between the oven part of the stove and the wall; that there was no vent-pipe on the stove; there was no flue in the kitchen; there was an opening on the stove back of the oven, which was placed so near the wall you could just put your hand between it and the wall. A Mr. Matthews set up the stove; witness asked him if he did not think the stove was too near the wall, and he said no, it would give her more room in the kitchen. He said it would be safe. Witness had had no experience

in setting up gas stoves, and relied on his judgment as to whether it was too close or not. Witness afterwards went to see Mr. Bulman, and reported the stove being too close to the wall, and told him, in her opinion, it was too close, and he said he would send a man out to see about it. The man came next day, but said he didn't have time to change it that day. He told witness he would come back later and change it. The house finally caught fire from back of the oven. The representative of appellant had told her it was all right, and she had to cook.

The fire occurred about seven or seven-thirty in the morning; the fire was right at the back of the oven. When witness first discovered it, it was just a little blaze, and she first went to get a bucket from the garage to put it out, and the whole roof was on fire. The kitchen roof was of tar paper. The fire department was called, and there was nothing saved. Everything was ruined. Plaintiffs' clothing was destroyed, except what they had on. The value of the house was between $1,500 and $1,800. The value of the furniture was $312. The value of the furniture purchased from the Bulman Furniture Company was around $200, and she had a statement from defendant showing a balance of $133. She talked to Mr. Bulman, and he said he did not figure he had anything to do with it. Witness told him he ought to compromise with her, as she lost all her furniture she had gotten from her father and that her husband had worked for. This was a couple of days after the house burned.

Witness and her husband bought the property jointly; they got no deed to it; it wasn't paid for; they had a contract; witness thinks the contract was not made to her and her husband, but in his name; it was just a contract between her husband and his brother, W. P. Schmuck; that they had no title to the real estate. They had an agreement that, when they paid so much, the title would be conveyed to her husband. Witness had an interest in it because she put money in it that she had got from her father. Title was supposed to be in both names, but the contract was just made to the husband.

Witness does not know how much had been paid on the place.

Witness asked the representative if the stove was not too close to the wall, and he said it was not. She still thought it was. Witness had had experience using gas stoves and knew how to use them. She was in the bedroom on the morning of the fire, and her husband had lighted the fire, and they were both dressing when the house caught fire. The stove was lighted about 6:30 or 7 o'clock. Witness and her husband used the kitchen as a dining-room and kitchen combined, so that it was necessary to warm up the kitchen before serving breakfast. It was a cold morning, and witness had lighted the kitchen stove ahead of time in order to warm up the kitchen. The first witness knew of the fire was when she smelled the smoke. The stove had been used hardly a month. It had been used quite a little while, and used in the condition in which it was installed. It looked too close to the wall to witness, and she thought it was dangerous. The stove was right against the wall. You could put your hand between it and the beaver-board wall; witness left the stove burning in that condition. The man told her it was safe, and she did not know anything about it. Her husband was in the house when it burned. There was no vent-pipe on the stove, and, when witness got out of the house, she noticed the whole top of the roof was on fire. She does not know how long it took her to get from the kitchen to the garage, but doesn't suppose it was very long. The garage was right on the back of the lot; the whole top of the roof was on fire before witness went out there. The items of furniture listed in Exhibit A total $312; witness bought that furniture herself; witness' husband assisted in paying for it; witness and her husband were married nine years; everything in the house was ruined by the fire. There was in the house the clothing of witness and her husband, and the bed-clothing, quilts and mattresses. Witness had another gas stove, listed at $25, which was not connected. Witness and her husband just lived in the two rooms, and used the kitchen range for heating as well as cooking;

witness had no servant, but did her own cooking; witness used the stove from the time it was bought until the house burned. Witness had been married nine years, and has used gas stoves most of the time.

Mrs. Mabel Beadle was present when the gas stove was set up, and corroborates the statements of Mrs. Schmuck as to what the man who put it up said, and as to how close the stove was to the wall. Mrs. Mabel Enabman was at the home of plaintiffs when the man came to see about the stove, and he said he did not have time to disconnect it and connect it again, but that he would come back. Witness did not know why the stove was to be disconnected.

A. C. Schmuck, one of the appellees, testified that he had helped his brother build a part of the house; his brother bought the house and built three rooms to it; witness assisted him, and afterwards contracted to buy the house; wife of the witness paid a part of the purchase price. She paid $350 and then some monthly installments; she obtained this money from the estate of her father. The value of the house was $1,800. There were four rooms, a sleeping porch and bathroom; it was a frame house of good material; the inside of the kitchen walls were beaver-board; beaver-board is a kind of cardboard composition. Witness saw the stove after it was connected; it was nearly up against the wall; the opening for the vent-pipe came out of the back of the stove, with a short elbow; that elbow had an offset for the pipe, and set back about half an inch, and that elbow was placed right against the wall; witness supposes the collar was about three-quarters of an inch from the wall. If vent-pipe had been placed on stove it would sit straight up from this elbow; vent-pipe would have extended up and not out towards the wall; this opening or elbow was against the wall and behind the oven; the fire was on the 1st day of December or the 30th day of November. Witness lighted the stove about seven o'clock in the morning, and went straight back to the bedroom to put on his clothes; he noticed the smoke before he got his clothes on. When he got out there, there was a little blaze behind the

stove; witness was trying to put the fire out, and told his wife to get a bucket, and when she got outside she hollered about it being on fire outside on the roof; witness told her there was no use then to get a bucket; witness ran out, and fire was all over the roof; witness lost two suits of clothes; thinks clothes he lost were worth $160; doesn't know the value of his wife's clothes.

Witness is a sheet metal worker, and has had experience in connecting up vent-pipes on gas stoves; has been using gas stoves ever since there has been gas in Little Rock.

In the wall there was tar paper. Composition wall was of inflammable material. The stove was so set that elbow was right against the beaver-board. Witness thought it was dangerous, but was told by one of the representatives that it was perfectly safe; that he connected them that way, and they used the stove. He went ahead and used it, although he thought it was dangerous. The wall began to look a little sooty back there where the pipe was. It looked charred back there, and his wife stopped using the stove for two or three days; the man said he would come back, and didn't, and then it got cold and they used the stove. Witness thought it was too close to the wall, and he noticed the scorching of the wall. What the man said did not necessarily satisfy witness. He said he was coming back and change it.

Mrs. Sarah E. Schmuck, being recalled, testified that her clothing alone was worth $150 and the bedclothing $50.

C. L. Harlan, a building contractor, testified that the value of the house was $1,768.50.

There was some conflict between the testimony as given by the plaintiffs and the testimony of the witnesses for defendants, but we deem it unnecessary to set out the testimony at length. The testimony of the plaintiffs shows that the stove was very close to the wall, and that, after using it, they noticed that the wall was scorched, and that appellant's representatives said that it was safe, and also said that they would fix it.

The appellant contends that the court erred in giving and refusing instructions.

Instruction No. 2, requested by the plaintiff, and which the court gave, reads as follows:

"You are instructed that, although you find from the evidence in this cause that plaintiffs at first believed the stove was so near to the wall as to be dangerous if used, yet, if you find that plaintiffs relied upon the statements, if any, of the defendant, or its servants, that it was safe to use the stove in its position, then plaintiffs would not be guilty of contributory negligence by using it."

We do not think this instruction correctly states the law. If plaintiffs believed the stove was so near the wall as to be dangerous, they would certainly have no right to rely on the statement of defendant, or its servants, unless they believed the statements to be true. This instruction tells them that, if they believed it was dangerous and yet relied on the statements of the defendant's servants, they would not be guilty of contributory negligence. If the plaintiffs believed it to be unsafe, but relied on the statements of defendant's servants, it would be a question for the jury to determine whether that was contributory negligence. The court could not tell them as a matter of law that they would not be guilty of contributory negligence.

Contributory negligence is the doing of something that a person of ordinary prudence would not do or the failure to do something that a person of ordinary prudence would do under the circumstances. Whether a person of ordinary prudence would continue to use a stove, when he believed it unsafe, because the representative of the appellant told him it was safe, we think, would be a question of fact for the jury. If plaintiffs continued to use the stove, believing it to be unsafe, because they had been assured by the person that installed the stove that it was safe, whether this would be contributory negligence on his part would be a question for the jury, and the court could not as a matter

of law state to the jury that, under those circumstances, they would not be guilty of contributory negligence.

Instruction No. 5, requested by the appellant, reads as follows:

"Although you may find from the evidence in this case that the defendant was negligent in putting the stove too close to the wall, yet, if you further find from the evidence that plaintiffs or either of them knew, or, in the exercise of ordinary care, should have known and appreciated the danger of using the stove while it was so placed, and used or continued to use it, then they cannot recover in this case, and your verdict will be for the defendant."

The court refused to give the above instruction as requested, but added to it the following: "Unless you find that they were assured of its safety by defendant or its agent, and plaintiffs relied on such assurance."

The instruction was correct as requested, and it was error to modify it as above. If the plaintiffs knew, or, by the exercise of care, should have known and appreciated the danger, then they could not recover. The fact that they were assured of its safety by the defendant and relied on such assurance would not entitle them to recover if they knew of and appreciated the danger. Certainly the most that the plaintiff could have been entitled to, if the instruction had not been given as requested, would have been for the court to tell the jury that, if plaintiffs knew and appreciated the danger, and were assured by the defendant of its safety, and relied on this, that as to whether or not this conduct on their part would be contributory negligence was a question of fact for the jury to determine. The court should not have told them that this reliance on the statement of the defendant was not contributory negligence. Whether it was or was not contributory negligence, under the circumstances, was a question for the jury. The instructions to which we have called attention, we think, are in conflict with the instruction given at the request of the defendant, instruction number 9. It reads as follows:

"If you find from the evidence that the danger, if any, in the use of the stove as installed, was known or should have been known · to the plaintiffs, you are instructed that they had no right to rely on the advice of the defendant that it was safe, if you find that they were so advised, and to continue to use the stove to .their damage." See *Western Union Tel. Co.* v. *Baltz, ante* p. 167.

And in instruction number 5, as modified by the court, the court tells the jury that they cannot recover under the state of facts set out, "unless you find that they were assured of its safety by defendants or its agents, and plaintiffs relied on such assurance." Whereas, in instruction number 9, just quoted, the court tells them they had no right to rely on the advice of the defendant.

The undisputed proof in the case shows that the plaintiffs believed that it was dangerous to use the stove as it was installed. They believed it was too close to the wall. Not only this, but, after they had used it a while, they noticed that the wall was charred or scorched. Although the appellant might have assured them that it was safe after the wall became scorched, they did not rely on this assurance entirely, because they themselves say that they quit using it for a while because of this condition. That is, because they concluded that it was unsafe, although the appellants' agents had told them that it was safe. When the appellees concluded that it was unsafe to use it, notwithstanding the statements of the representatives of appellant, then the most that the plaintiff could be entitled to in the way of instructions would be for the court to instruct the jury that it was a question of fact for them to decide from the evidence whether the plaintiffs were guilty of contributory negligence, and not tell them as matter of law that, if they relied on the statements of appellant's representatives, they would not be guilty of contributory negligence.

Appellees themselves contend that instruction No. 6, given at the request of the defendant, fairly submitted to the jury the question of fact, that is, the question of negligence and contributory negligence. That is true.

This was a correct instruction. And the appellees quoted as follows: "The rule is that, when the facts admitted to be true are clearly proven and not denied, are such that reasonable men might draw different conclusions from them, the question of negligence is one for the jury." And, as supporting this rule, appellees cite *Dawler* v. *Citizens' Gas, etc., Co.*, 71 W. Va. 417, 76 S. E. 845, Ann. Cas. 1914C 343, and other cases, and also say the same rule is recognized and has been applied by this court, citing a number of recent Arkansas cases.

The appellee is entirely correct. Wherever a question is such that fair-minded men might draw different conclusions, then it becomes the duty of the court to submit the question to the jury.

We therefore hold that it was improper to tell the jury as a matter of law that, if the appellees first believed the stove was so near the wall as to be dangerous if used, but that, if the plaintiffs relied on the statements of the defendant's servants, they were not guilty of contributory negligence. This was a question about which fair-minded men might differ, and it was therefore the court's duty to submit this question to the jury—the question of contributory negligence. If plaintiffs thought it was dangerous, and defendant's servants stated that it was safe, this raised a question of fact for the jury. And it was the duty of the court to let them determine from the evidence whether the plaintiffs were guilty of contributory negligence.

If the jury should find that the representatives of the defendant were experienced in the installing and use of stoves of this character, and the plaintiffs did not appreciate the danger, and should find that a person of ordinary prudence would have acted as plaintiffs did under the circumstances, then they would find, of course, that the plaintiffs were not guilty of contributory negligence.

For the errors indicated the cause is reversed, and remanded for new trial.