## COFFMAN et al. v. SOUTHERN COAL CO., Inc., et al.

### No. 98.

District Court, W. D. Arkansas, Harrison Division.

Nov. 3, 1943.

Virgil D. Willis and Ben C. Henley, both of Harrison, Ark., for plaintiffs.

Verne C. McMillen, of Little Rock, Ark., for interveners.

Warner & Warner, of Fort Smith, Ark., and Shouse & Shouse, of Harrison, Ark., for Southern Coal Co.

J. M. Smallwood, of Russellville, Ark., and Hall & Hall, of Fort Smith, Ark., for Watson Coal Co.

MILLER, District Judge.

The unbounded confidence of able counsel for plaintiffs in the right of plaintiffs to recover, exhibited in the trial of the case and expressed in the written brief for plaintiffs, impels the court to submit this memorandum.

The case was tried by the court without the intervention of a jury on October 5, 1943, and formal findings of fact and conclusions of law have this day been signed and filed.

The pleadings, including motions, raise many questions, the decision of which are not necessary in view of the opinion of the court on the question of the right of the plaintiffs to recover against either of the defendants. Neither is it necessary to pass upon the rights asserted by any of the interveners nor the motion of defendants to dismiss the interventions on the ground that the court is without jurisdiction to entertain any of the claims except that of Westchester Fire Insurance Company.

The plaintiffs are the owners of a large brick building in Harrison, Arkansas. On December 4, 1941, the first floor of the building was occupied by merchandise stores and by the Coffman Brothers Drug Company. The second floor was occupied by the general offices of the Missouri and Arkansas Railway Company. There were some other office rooms in the east end of the building. The building was heated by a central heating plant located in the basement. The fuel used was stoker coal and it was the custom of plaintiffs to purchase two carloads of coal each season and to store the coal in a bin in the basement where it was shoveled into a stoker that fed the coal into the furnace as needed. The plaintiffs had purchased and used "Polar Paris Stoker Coal" for the years

1939 and 1940 from the defendant, Southern Coal Company, Inc., hereinafter called Southern, which was the sales agent for the defendant, Watson Coal Company, hereinafter called Watson, the producer of the coal. In June or July, 1941, the plaintiffs gave the salesman of the Southern an order for two cars of "Polar Paris Stoker Coal" to be used during the fall and winter of 1941–1942. The first car was shipped from the mine of Watson on or about August 18, 1941; was duly received by plaintiffs and placed in their bin. The second car was likewise shipped, received and placed in the same bin on top of the other coal about one month later. Each car contained approximately forty-nine tons. Soon after the second car was received the plaintiffs ascertained that it was not "Polar Paris Stoker Coal" but was "slack", and immediately advised the Southern. They requested that the same be removed from the bin and from the "Polar Paris Stoker Coal" that had been shipped and received in the first car. The salesman of the Southern called on plaintiffs and he and one of the plaintiffs examined the coal in the bin. The salesman asked that the "slack" coal be retained in the bin until Watson could be contacted and advise them what steps to take with reference to the breach of the contract of sale.

On or about November 13, 1941, a fire was discovered in the bin and plaintiffs removed the "slack" coal from the top of the bin. They removed in all about one-third of the "slack" coal that had been shipped in the second car. On December 3, 1941, Watson called on plaintiffs and after looking at the bin stated that the "slack" coal should not have been shipped, but that since the plaintiffs had removed a portion of it that the situation with reference to fire was safe. The building was discovered to be on fire from the vicinity of the coal bin at 2 o'clock A.M., December 4, 1941.

The plaintiffs allege that the building and contents were destroyed by the fire "which originated by reason of combustion produced by the slack coal shipped and delivered by the defendants in violation of the contract as first entered into, and which fire was the result of the carelessness and negligence of the defendants in breaching the contract and their failure to exercise ordinary care in the removal of said coal after discovery of the condition as hereinbefore alleged".

The Southern in its answer alleges, "that within a short time after placing or storing the coal described in the complaint in their said building, the plaintiffs discovered that said coal had become ignited and was burning; that such discovery was made long before said building was set on fire, and with full knowledge thereof, and of the danger and hazard to said building created thereby, plaintiffs failed and neglected to extinguish said fire or remove the coal, or take other precautions to protect said building and prevent injury thereto, and that as the direct and proximate result of such omission on plaintiffs' part, said building and contents caught fire and burned. That by the exercise of reasonable care, plaintiffs could have avoided injury to themselves and prevented said building from being burned, and defendant pleads such failure in bar to their right to recover herein."

The answer of Watson also contains a similar plea.

No complaint is made of the kind and quality of the coal shipped in the first car. It contained "Polar Paris Stoker Coal", the kind and quality ordered by the plaintiffs, but the second car did not contain "Polar Paris Stoker Coal". Instead it contained "slack" coal. The plaintiff rescinded the contract in so far as the second car of coal is concerned and requested defendants to remove it from their bin.

Section 69(d) of the Uniform Sales Act, being Act 428 of the Acts of the General Assembly of Arkansas for the year 1941, provides that where there is a breach of warranty by the seller, the buyer may, "(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid".

Section 69(2) of the same Act provides that when the buyer has claimed and been granted a remedy in any of the ways provided in the Act that no other remedy can be granted.

The plaintiffs are not seeking a remedy under the Act. The second car had been delivered by the railroad company and the slack coal had been placed in the bin on

top of the contents of the first car before plaintiffs learned that the second car was slack coal and not "Polar Paris Stoker Coal". Then it was that they advised defendants that they had not shipped the kind of coal that had been ordered and requested defendants to remove the slack coal from the bin.

Section 70 of the Act (supra) provides that nothing in the Act shall affect the right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recovered.

The plaintiffs are seeking to recover because of the alleged negligence of the defendants in breaching the contract and in failing to use ordinary care to remove the slack coal from the bin after obtaining full knowledge of the situation caused by the shipment of slack coal instead of "Polar Paris Stoker Coal".

The defendants did not perform their contract with plaintiffs. The second car was slack coal and not "Polar Paris Stoker Coal" as ordered by plaintiffs, but the failure of defendants to ship the kind of coal ordered was not the proximate cause of the fire. In Martin v. Railway Company, 55 Ark. 510, 521, 19 S.W. 314, 317, the court said: "The mere failure of the defendant to perform its contract with the compress company was in nowise the juridical cause of the fire. There was no direct connection between the neglect of the defendant to furnish transportation according to its contract and the fire. The failure to furnish cars was one of a series of antecedent events without which, as the result proves, the fire, probably, would not have happened, for if the cotton had been removed, there might have been no fire. But it was not the direct and proximate cause, and did not make the defendant responsible for losses caused by the fire. St. Louis, etc., R. Co. v. Commercial Ins. Co., 139 U.S. 223, 11 S.Ct. 554 [35 L.Ed. 154]."

In Southwestern Bell Tel. Co. v. Adams, 199 Ark. 254, 261, 133 S.W.2d 867, 870, the court said: "In order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of attending circumstances."

In the same case at page 263, of 199 Ark., at page 871 of 133 S.W.2d, the court quoted from Mays v. Ritchie Grocer Co., 177 Ark. 35, 5 S.W.2d 728, as follows: "If the act or omission is one which the party ought, in the exercise of ordinary care, to have anticipated as likely to result in the injury to others, it is liable for an injury proximately resulting therefrom, though it might not have foreseen the particular injury which did occur."

Mere proof of the occurrence of the fire is not proof that it was proximately caused by the negligence of the defendants. In 46 Am.Jur. (Sales) Section 820, it is said: "The mere fact that the buyer's property was damaged in the use of the articles bought is not sufficient to make out a case of negligence for the buyer."

■ Juries and courts are not permitted to guess or speculate as to the proximate cause of an injury. The plaintiff has the burden of proving that the injury was proximately caused by the negligent act or omission of which complaint is made. Turner v. Hot Springs Railroad Co., 189 Ark. 894, 75 S.W.2d 675; Missouri Pac. R. Co. v. Baum, 196 Ark. 237, 242, 117 S.W.2d 31; Malvern Lumber Co. v. Sweeney, 116 Ark. 56, 172 S.W. 821; Fort Smith Gas Co. v. Blankenship, 193 Ark. 718, 721, 102 S.W.2d 75.

■ Proof that defendants shipped slack coal in violation of the contract; that said slack was piled on top of "Polar Paris Stoker Coal" then in the coal bin of plaintiffs; that defendants were advised soon thereafter that they had wrongfully shipped to plaintiffs slack coal and were requested to remove it from the bin; that on or about November 13, 1941, a fire was discovered in the coal bin which was extinguished by plaintiff's removal from the bin of about one-third of the slack and by frequently moving in the bin the remaining slack with shovels; that such condition prevailed until the early morning of December 4, 1941, when a fire which originated in or near the coal bin occurred and badly damaged the building and contents, is not sufficient to establish that the damage was proximately caused by the negligence of the defendants.

The plaintiffs rely upon the cases of Mann-Tankersly Drug Co. v. Cheairs, 75 Ark. 596, 88 S.W. 873, and Bulman Furniture Company v. Schmuck, 175 Ark. 442, 299 S.W. 765, 55 A.L.R. 1039. In view of the facts disclosed by the testimony, neither of these cases are controlling and are

easily distinguishable from the case at bar.

The contention of plaintiffs is bottomed upon the principle that the seller having superior knowledge of the characteristics of slack coal and knowing that fire would likely originate from spontaneous combustion, it was the seller's duty to warn them of the danger, or to remove the source of the danger and not having done so sellers are liable.

They attempt to justify their own failure to remove the slack coal on the claim that defendants by certain statements and representations lulled them into a false sense of security and thus prevented them from removing the slack coal from the bin. No such allegations are contained in the complaint but the complaint will be treated as amended to conform to the evidence as provided in Rule 15(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

In 46 Am.Jur. (Sales) Section 804, it is said: "The ground of liability is the seller's superior knowledge of the dangerous characteristics of the article sold; and where it appears that the person injured was as fully cognizant of the peril as was the defendant seller or manufacturer, there can be no recovery."

In Section 807 of the same volume, it is said: "In spite of his negligence, a seller is, of course, not liable therefor to a buyer who, by his own negligent conduct, has contributed to the injury. And while the use of the purchased article in a particular manner which would otherwise appear to be negligent may be proper where the buyer relies, and has a right to rely, upon the seller's assurances that it is safe to use the article in such a manner, a buyer who uses the article after he discovers the danger will be held to have assumed all the risk of the danger to himself, notwithstanding the seller's assurance of safety."

In Bulman Furniture Co. v. Schmuck, 175 Ark. 442, 450, 299 S.W. 765, 769, 55 A.L.R. 1039, one of the cases relied upon by plaintiffs, the court said: "If the plaintiffs knew, or by the exercise of care should have known and appreciated, the danger, then they could not recover. The fact that they were assured of its safety * * * and relied on such assurance, would not entitle them to recover, if they knew of, and appreciated, the danger."

Slack coal is an ordinary article that daily moves in commerce. It is used by many as fuel. The evidence does not show it to be inherently dangerous. In fact, the testimony discloses that it is no more dangerous than any other commercial coal. There is entirely lacking any proof of knowledge on the part of the defendants of danger from fire caused by spontaneous combustion, or of facts from which such knowledge might fairly be inferred. The undisputed evidence is that the plaintiffs knew of the hazard of which they now complain. The evidence fails to show any knowledge on the part of the defendants that the plaintiffs did not possess. The plaintiffs showed that a fire was discovered in the coal about three weeks prior to the fire of December 4, 1941. With this knowledge they did not completely remove the hazard. They did remove some of the slack coal, but chose to take their chances on another fire, and to prevent serious damage by watching the coal. One of the plaintiffs testified that after they had "shoveled it around it looked like it was alright". The plaintiffs failed to use ordinary care to protect their property from a danger that was as apparent to them as to the defendants. They could have removed the hazard at a small expense in comparison to the loss caused by the fire.

In St. Louis S. W. Ry. Co. v. Reagan, 79 Ark. 484, 96 S.W. 168, 169, 7 L.R.A., N.S., 997, the court said: "It was the duty of plaintiff, when the company failed to carry out its contract to do what he reasonably could to avoid further injury to himself, and we are of the opinion that he cannot recover for pain and suffering caused by the delay under such circumstances, for he had it in his power to have avoided such injury. Hall v. Memphis & C. R. Co., C. C., 15 F. 57; Louisville & Nashville R. Co. v. Spinks, 104 Ga. 692, 30 S.E. 968." See, also, Montgomery v. Arkansas C. S. & I. Co., 93 Ark. 191, 195, 124 S.W. 768.

In the case of Louisville, N. O. & Texas R. Co. v. Jackson, 123 Ark. 1, 8, 184 S.W. 450, 452, Ann.Cas.1918A, 604, the court said: "Of course, the property owner is required to do whatever is reasonably necessary to protect his property from injury, and cannot permit the injury to occur and then claim full damages when he might have prevented it or lessened its effect by a reasonable expenditure."

In Wisconsin & Arkansas Lumber Co. v. Scott, 167 Ark. 84, 87, 267 S.W. 780, 781, the court said: "To be sure, if the de-

struction of appellee's pasture fence was caused through the negligence of the appellants in putting out fire, and this negligence was the proximate cause of the appellee's damage, then he was entitled to recover. On the other hand, even if the appellants' negligence caused the destruction of the fence, yet if the appellee knew of such destruction in time that, by the exercise of ordinary care, he could have prevented the escape of his stock and failed to exercise such care, then the proximate cause of the damage caused by the escaping of the animals was the appellee's own negligence."

The plaintiffs are not entitled to recover against either of the defendants and their complaint will be dismissed.

■ Even if the court has jurisdiction to determine the claims of the interveners, their rights are dependent upon the right of plaintiffs to recover, and therefore, the interventions will be dismissed. ·