[No. 30582.   Department One.   August 12, 1949.]

KATHERINE W. THEURER, *Individually and as Executrix, et al., Respondents,* v. R. B. CONDON *et al., Appellants.*[1]

[black redaction blocks]

[1]Reported in 209 P. (2d) 311.

*Reischling & Lurie,* for appellants.

*Patterson & Patterson* and *Frederick C. Peterson,* for respondents.

BEALS, J.—This action was instituted by Carl Theurer and Ella C. Theurer, as plaintiffs, against R. B. Condon and Jane Doe Condon, sole traders doing business as Benjamin Franklin Electric Company and Good Housekeeping Shop. In their complaint, plaintiffs asked for judgment against defendants in the sum of $737.83, on account of damages to an apartment house owned by plaintiffs, the damages having been occasioned by a fire which, plaintiffs alleged, was proximately the result of defendants' negligence in in-

stalling an oil supply tank and oil burning device in a range in one of the apartments located in the building.

By an amended complaint, filed November 26, 1947, it was alleged that, after the institution of the action, the plaintiff Carl Theurer had died, leaving a last will and testament; that the appointment of plaintiff Katherine W. Theurer as executrix thereof had been confirmed by the court, and that she was the acting and qualified executrix of the estate of Carl Theurer, deceased.

By the amended complaint, Katherine W. Theurer, as executrix of the estate of Carl Theurer, deceased, was substituted in place of Mr. Theurer as party plaintiff, and the action continued, damages being demanded as set forth in the original complaint.

By their answer, defendants denied all negligence on their part and pleaded affirmatively several defenses, namely, (1) that, if plaintiffs suffered any damages, as alleged in the complaint, such damages were the result of the negligence of plaintiffs or their tenants; (2) that, if the installation of the oil supply tank and other appliances by defendants had been negligently accomplished, such negligence, if any, occurred not later than early in the year 1938, and that, as plaintiffs alleged that they had suffered damages as the result of a fire which occurred during November, 1944, there was no causal connection between the installation of the appliances by defendants and the fire, the latter having occurred at such a long period of time after the installation; (3) that any hazard which existed because of the operation of the oil burner, and so forth, was assumed by plaintiffs or their tenants, the appliances having been used for more than seven years after the installation thereof; and (4) that the installation of the appliances was ordered by Mrs. E. S. Johnson (known at the date of filing the answer as Daisy B. Leavens), who occupied an apartment in the building owned by plaintiffs, for the purpose of converting the cooking range therein into an oil burner; that defendants installed the appliances ordered, complying with the fire ordinances and other regu-

lations of the city of Seattle, and that, if any fire occurred, as alleged in the complaint, such fire was occasioned by the negligence of Daisy B. Leavens or other persons operating the oil burner. Defendants also pleaded affirmatively the statute of limitations.

By their reply, plaintiffs denied the affirmative allegations contained in defendants' answer.

The action was tried to the court, sitting without a jury, and resulted in the entry of findings of fact and conclusions of law in favor of the plaintiffs, followed by a judgment in favor of the plaintiffs and against the defendants for $737.83, together with costs, from which judgment defendants have appealed.

Appellants assign error upon the denial by the trial court of their motion for nonsuit, made at the close of respondents' case; upon the denial of their motion for dismissal of the action, made at the close of evidence; and upon the entry of judgment in favor of respondents.

Appellants do not assign error upon any findings of fact made by the trial court, and we, therefore, consider the findings as established facts in the case. *Brydges v. Millionair Club*, 15 Wn. (2d) 714, 132 P. (2d) 188.

The statement of facts discloses very little dispute in the evidence.

During the year 1937, the Theurers were the owners of a small apartment house located at 1608 Twelfth avenue, in Seattle, and were represented by a local agent. In May, 1937, Mrs. Johnson, through the agent, leased an apartment on the second floor. Many repairs were required, and it was agreed that the lessee would place the apartment in reasonably good condition for a credit of three months' rent. The tenant installed her own coal cooking range in the apartment, and, in December, 1937, desiring that the coal range be converted into an oil burner, Mrs. Johnson (whom we hereafter refer to as Mrs. Leavens) purchased from appellants an appropriate appliance, which appellants installed. It appears that the oil for the burner was contained in a tank, with a capacity of a little less than six

gallons, which was attached to the wall at the back of the range, the distance between the back of the stove and the front of the tank being approximately three inches. The fifty-gallon storage tank for the oil was about fifteen feet distant from the outside of the building. The tenant received typewritten instructions concerning the use of the stove, one provision thereof reading as follows: "Never allow oil to run into burner when burner is hot, or light a hot burner."

The tenant used the stove as an oil burner, without incident, until November 6, 1944. On that day, the tenant and Mr. Leavens, her then husband, were at home ill. Mrs. Leavens had just finished cooking their lunch on the range, which was still hot, when two friends, who had agreed to bring oil to the apartment from the storage tank and fill the reservoir at the back of the range, called at the apartment. These friends commenced to fill the reservoir attached to the stove, pouring oil therein from a one-gallon can. Apparently, some oil dropped from the can to the top of the hot stove, causing a flash fire which resulted in substantial damage to the building.

This action was instituted July 17, 1945, by the respondents for the recovery of damages from appellants on account of injuries to the building. By their amended complaint, supplemented by a bill of particulars, respondents alleged their ownership of the apartment house, the damage thereto by fire in the sum of $737.83; that the proximate cause of the damage was the negligence of the appellants in installing the oil supply tank and the oil-burning device in the range in such close proximity one to the other and in such a position that it was necessary to reach over the oil burner to replenish the fuel in the oil tank, and that the installation was so made in violation of ordinances of the city of Seattle, which were pleaded in the amended complaint.

By the bill of particulars filed by respondents (which was later made a part of the amended complaint by reference thereto), ordinance No. 59867 of the city of Seattle, effec-

tive August 22, 1916, with amendments to January 1, 1938, was pleaded, it being stated that the installation by appellants of the oil burner was made in violation of the terms of that ordinance. It was also stated in the bill of particulars that, by § 218 of the ordinance, it was required that a written permit from the chief of the fire department be procured before installing any oil-burning equipment, where the estimated cost of installation exceeded ten dollars, and that no such permit was procured in connection with the installation above referred to, which cost in excess of ten dollars.

The trial court found that the fire was occasioned by the spilling of some oil upon the surface of the heated stove while the oil tank was being refilled, as above set forth. Finding No. 5 reads as follows:

"That plaintiffs and their agent, Henry Broderick, Inc., had no knowledge of the installation of said oil burning range nor were they consulted by the tenant, R. I. Leavens, in the installation of said range."

The trial court expressed the view that the installation of the oil tank by appellants was defective and was negligently and wrongfully accomplished, and that this defective installation was the proximate cause of the damages suffered by respondents; that there was no contributory negligence or assumption of risk of fire on the part of respondents; that no duty rested upon respondents to inspect the property rented under conditions such as appeared from the evidence, and that the action was not barred by the statute of limitations, having been commenced within two years from the date the damage occurred.

In their brief, appellants present their arguments under two headings; first, that it should be held that respondents' action was not commenced within the time limited by law and is, therefore, barred by the statute of limitations.

Respondents contend that appellants may not present any question concerning the statute of limitations, but the record supports appellants' position that their argument upon this phase of the case should be considered.

Rem. Rev. Stat., § 165 [P.P.C. § 73-23], reads as follows:

"An Action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued."

This court has held that actions sounding in tort are controlled by the foregoing section. *Denny v. Everett,* 46 Wash. 342, 89 Pac. 934, 123 Am. St. 934; *Welch v. Seattle & Montana R. Co.,* 56 Wash. 97, 105 Pac. 166, 26 L. R. A. (N.S.) 1047; *Pettigrew v. McCoy-Loggie Tbr. Co.,* 138 Wash. 619, 245 Pac. 22. See, also, *Pierce County v. Newman,* 26 Wn. (2d) 63, 173 P. (2d) 127.

Appellants contend that the statute of limitations commenced to run when the oil tank and burner were installed, December 30, 1937, and argue that, assuming they were negligent in installing the burner and tank as they did, any right of action on the part of respondents was barred after the expiration of the statutory period from the date of the installation.

On the other hand, respondents argue that the statute of limitations commenced to run from the date of the fire, November 6, 1944, when respondents' property was damaged. 34 Am. Jur. 94, 106, 126, §§ 115, 131, 160, respectively.

This court has several times decided questions in connection with the date when a statute of limitations commenced to run, in cases somewhat analogous to the case at bar.

In the case of *Sterrett v. Northport Mining & Smelting Co.,* 30 Wash. 164, 70 Pac. 266, an action by the owner of an orchard for damages to trees and berry bushes, occasioned by fumes from a neighboring smelter, this court held that the statute of limitations began to run from the time that apparent damage to the farm was sustained. The cases of *Smith v. Seattle,* 18 Wash. 484, 51 Pac. 1057, 63 Am. St. 910; *Doran v. Seattle,* 24 Wash. 182, 64 Pac. 230, 85 Am. St. 948, 54 L. R. A. 532; *Brisky v. Leavenworth Logging, Boom & Water Co.,* 68 Wash. 386, 123 Pac. 519; *Jacobs v. Seattle,* 100 Wash. 524, 171 Pac. 662; *Island Lime Co. v. Seattle,* 122 Wash. 632, 211 Pac. 285; *Weller v. Snoqualmie Falls Lbr.*

*Co.,* 155 Wash. 526, 285 Pac. 446, and *Grant v. Fisher Flouring Mills Co.,* 181 Wash. 576, 44 P. (2d) 193, are to the same effect. See, also, *White v. Schnoebelem,* 91 N. H. 273, 18 A. (2d) 185.

■ If appellants negligently installed the oil burner and tank, in violation of appropriate ordinances of the city of Seattle and in such a manner as to constitute a manifest fire hazard, the negligent act was committed when the installation was made, December 30, 1937. Nevertheless, the fire hazard created by appellants' negligence was continuous, and, if the fire which resulted in this action was caused by the filling of the tank when the stove was hot, the bar of the statute of limitations, as to respondents' right of action, did not commence to run as to damages occasioned by the fire until the date of the fire, November 6, 1944.

The trial court did not err in ruling that respondents' action was not barred by any statute of limitations.

The second, and last, portion of appellants' brief opens with the following proposition:

"If the defendant violated the terms of the city ordinance, the violation was technical and not the proximate cause of the fire, hence nonactionable."

The judgment in favor of respondents should be sustained if, from the record, it appears that the trial court was correct in holding that appellants installed the oil burner in the apartment in respondents' building in a manner which violated the fire ordinances of the city of Seattle; that such violation was negligence *per se,* and that the damages which respondents suffered resulted proximately from appellants' negligent installation of the appliance.

A copy of the "Provisions of the Fire and Explosion Hazard Ordinance Relating to Oil Burners," as adopted by ordinances of the city of Seattle, was introduced in evidence. We quote from this exhibit:

"Section 216. Wherever used in this Ordinance in referring to oil burners and/or oil burning equipment, the following words and expressions are used in the sense defined in this section:

"Gravity Oil Burner: An oil burner to which fuel is delivered from a gravity oil tank.

"Gravity Oil Tank: An oil storage or supply tank from which oil is delivered to an oil burner by means of gravity flow, provided, this definition shall not apply to an oil reservoir which is elsewhere defined. , . .

"Section 218. It shall be unlawful to maintain or use, or cause to be maintained or used, any oil burner or oil burning equipment without complying with all the provisions hereof relating to the maintenance and use of oil burners· and oil burning equipment, and it shall be unlawful to install, alter or repair, or to begin the installation, alteration or repair of any oil burner, oil burning equipment or underground tank for the storage of flammable liquids, where the cost or expense, or the estimated cost or expense of such installation, alteration, or repair exceeds the sum of Ten Dollars ($10.00), without first obtaining from the Chief of the Fire Department a written or printed permit so to do, and without complying with all the provisions hereof relating to the installation, alteration or repair of the same. . . .

"Permits as herein required shall be issued in accordance with the following terms: . . .

"(c) The Chief of the Fire Department, or any Inspector in such Department designated by him, shall inspect all burners, equipment and/or underground tanks installed, altered or repaired pursuant to such permit, and if the same comply with the provisions of Ordinance No. 59867, as amended, shall endorse his approval thereof on such permit. No such oil burner or oil burning equipment, or underground tank, shall be used without such endorsement. . . .

"Section 220. Gravity oil burners for installation in ranges, stoves, furnaces and other heating devices, and all oil burning equipment in connection therewith, shall comply with the following requirements of this section. . . .

"(f) No oil burner connected to a gravity oil tank having a capacity in excess of six (6) gallons shall be located above the lowest story of the building in which installed, or be less than ten (10) feet from any stove, furnace, boiler or other heat radiating device. When the capacity of the gravity oil tank does not exceed six (6) gallons, such tank may be located not less than three (3) feet from such heating device. No gravity oil tank shall be located more than thirty-six (36) inches above the oil burner to which it is

connected. Such tank shall be securely fastened in place on a strongly constructed stand of incombustible material adequately secured against overturning."

From the record, it appears that the oil burner and oil tank in question fall within the foregoing definitions and requirements. The court's finding No. 3 reads as follows:

"That on the 6th day of November, 1944 the said apartment house was damaged by fire; that said fire was the proximate result of the unlawful and negligent installation by the defendant of an oil range heater in the apartment of R. I. Leavens, a tenant in plaintiff's apartment house; that said installation was in violation of the ordinances of the City of Seattle, Sub-Section 220 of the Fire Code, in that the tank on said oil burning device was located less than three feet (3 ft.) from the stove or heating device; that said installation was negligent in that the tank and filling spout was located in such a manner as would require the holding of a servicing container over the stove or heating device while filling said tank. That said installation was made in December, 1937."

This finding is supported by the evidence.

From the evidence, it appears that an agent of appellants, acting for Mrs. Leavens, undertook to procure the necessary permit, as required by § 218 of the Seattle fire code. It is, however, admitted that neither before nor after the installation of the oil burner was any permit issued. Apparently the burner was installed December 30, 1937, and, February 21, 1938, appellants wrote a letter directed to "Mr. H. L. Collier, City Treasurer, Fire Department, 301 Second Avenue South, Seattle, Washington," which letter reads in part as follows:

"Kindly note the following installations of oil burning ranges and check enclosed to cover those permits paid on contracts."

Following the above, is a list of sixty-six oil-burning devices, the burner here in question appearing as No. 28 on that list. Appellants consider this letter a proper and adequate application for the required permit.

It appears that, when Mrs. Leavens purchased the oil burner from appellants, she paid them one dollar covering

the charge for the permit, as provided by the fire ordinances.

There is also in evidence a "FEE RECEIPT," dated "2/23/," signed by an officer of the fire department, showing payment by "Ben Franklin Co." of nineteen dollars for "Permit or application No. 11600-11618," covering "19 Cir. Htrs. & Ranges."

Called as a witness on behalf of respondents, Mr. K. T. Crowley testified that he was "chief secretary of the Seattle Fire Department," and, on cross-examination, that the fee receipt, No. 4231, included the installation in question. The witness also testified that, on two occasions, a representative of the fire department had called to inspect the installation, but, finding no one in the apartment, was unable to make the inspection, and that the department then dropped the matter.

It is clear that no permit for this installation, as required by the ordinance, was ever issued by the fire department.

Mr. Blaine Rossman, called as a witness by respondents, testified that he was a "fire inspector," who had been so employed for twenty-two years; that he examined the apartment in question after the fire, and that the oil burner had been improperly installed, as "the reservoir was less than 36 inches from the heating appliance and installed in such a location that oil could easily be spilled upon the range." The witness testified further concerning the improper installation of the appliance.

The trial court's findings that the oil burner and tank were improperly and negligently installed, and that this negligence was a proximate cause of the fire, are amply supported by the evidence.

Pursuant to the agreement between appellants and Mrs. Leavens, the duty rested upon the former to so install the oil burner that its use would not constitute a fire hazard.

It is admitted that there was no contractual relationship between appellants and respondents, and appellants accordingly contend that respondents may not recover judgment against them for damages resulting from the fire.

Respondents argue that, in the absence of any assign-

ment of error by appellants in connection with the making of any finding of fact which the court entered, appellants may not contend before this court that their motion for judgment in their favor, made at the close of the evidence, should have been granted and that the trial court erred in entering judgment in favor of respondents.

■ Because they failed to stand upon their motion for nonsuit, made at the close of respondents' case and denied by the court, and proceeded to introduce evidence on their own behalf, appellants may not contend before this court that their motion for nonsuit should have been granted. *Hansen v. Lindell,* 14 Wn. (2d) 643, 129 P. (2d) 234.

Passing this question, from the record before us it cannot be doubted that the installation by appellants of the oil burner and attached oil tank violated the appropriate ordinances of the city of Seattle, and that they installed the burner and oil tank in such a manner as to render them dangerous to persons and property. This appears from the testimony and from a photograph introduced in evidence by respondents, which shows the position of the tank with relation to the range.

We quote from the testimony of the witness Rossman on his direct examination:

"Q. Now, Mr. Rossman, I will ask you this question, of how this oil burner was improperly installed? A. The reservoir was less than 36 inches from the heating appliance and installed in such a location that oil could easily be spilled upon the range. . . . Q. You could possibly have this situation of this stove over three feet away from the wall and that would have been a proper installation, would it, Mr. Rossman? A. If the appliance was 36 inches from the wall, then the tank in order to comply would have to—the outside rim of the tank would have to be 36 inches distant from the stove. Therefore, if the reservoir is to be placed back of the appliance, the stove would have to be placed 36 inches plus the width of the reservoir. Q. Away from the— A. (Interposing) Yes, sir. Q. (Continuing) —stove. Mr. Rossman, disregarding this ordinance that directs the installation of these oil burners, in your opinion does this installation as it exists in this case constitute a fire hazard? A. Oh, certainly. Q. For what reason? A.

Why, because it's either ignorance or indifference as to the proximity of inflammable oils to a heated surface. That's the ABC of fire prevention, to keep the inflammable material away from the hot stuff. Q. And in your opinion then, this tank being in that close proximity to the stove, the oil could have been ignited, is that your opinion? A. The heat would have caused the inflammable oil to become volatile, and the vapors easily could be ignited by an open flame. Oil ceases to be oils when they're subjected to sufficient heat; they become vapors. Q. In your opinion, where it's necessary to fill an oil tank over a stove which may at some time be in operation, would that constitute a fire hazard? A. Definitely so."

█ It must be assumed that appellants knew that the installation which they made at the order of Mrs. Leavens was placed in a house occupied by persons other than their vendee. The installation that appellants placed constituted a fire hazard. The fact that no fire occurred for several years after the installation is not controlling.

In Prosser on Torts, 349, § 48, appears the following text:

"Remoteness in time and space undoubtedly is important in determining whether the defendant has been a substantial factor in causing the harm at all, and may well lead to the conclusion that he has not. But once such causation is found, it is not easy to discover any merit in the contention that such physical remoteness should of itself bar recovery. The defendant who sets a bomb which explodes ten years later, or mails a box of poisoned chocolates from California to Delaware, has caused the result, and should obviously bear the consequences."

█ As to appellants' responsibility to respondents, it would seem that, if a person sells to a transient guest in a hotel an article which, for one reason or another, is dangerous and likely to cause a fire, to the knowledge of the vendor, and if such a fire is caused, the liability of the vendor should not be limited only to damage suffered by the vendee, but that damages because of injury to the building could be recovered.

The question is discussed in Prosser on Torts 678 *et seq.*, § 83, in connection with the liability of a manufacturer of a defective article to a purchaser thereof. The text states

that such liability has been extended to cover the purchaser's employees, members of his family, and even casual bystanders. It is also noted that the liability of the manufacturer has been extended by holding him responsible for damage to property.

Among other authorities cited in support of the text, is the case of *United States Radiator Corp. v. Henderson,* 68 F. (2d) 87, in which the circuit court of appeals for the tenth circuit affirmed a judgment rendered by a district court, entered upon the verdict of a jury in favor of the owner of a dwelling that was burned as the result of the negligent manufacture, by the defendant, of a boiler, which was purchased by the plaintiff from a third party.

Other cases are cited in support of the text, including *Marsh Wood Products Co. v. Babcock & Wilcox Co.,* 207 Wis. 209, 240 N. W. 392, and *Genesee County Patrons Fire Relief Ass'n v. L. Sonneborn Sons,* 263 N. Y. 463, 189 N. E. 551.

In 38 Am. Jur. 707, § 58, "foreseen or foreseeable consequences" in connection with the law of negligence are considered. We quote from the text:

"If the consequences of a negligent act were foreseen by the actor, for the purposes of determining proximate cause, it does not matter whether those consequences were immediate or remote. . . . As hereinafter appears, the connection between a negligent act and an injury is not broken by an intervening event which occurs so naturally in the course of events that it might reasonably have been anticipated by the wrongdoer."

The matter of "results reasonably to be expected" is discussed at length in § 59, p. 710. At p. 711 appears the following:

"The fact that the duty violated is a statutory duty has been held sufficient in itself to show that injurious consequences from the violation could reasonably be anticipated."

Appellants contend that, if there was any violation of the fire ordinance above referred to, it was merely technical and was excusable. They also argue that there were no means available to them by which they might have dis-

covered the fact that the fire department had issued no permit for this installation, and that, therefore, there was no causal connection between any violation of the ordinance and the damage resulting from the fire.

This argument is not convincing. Appellants were in the business of installing appliances similar to that here in question. It must have been apparent to them that the position of the oil tank with relation to the oil burner created a serious fire hazard. This hazard was the proximate cause of the damages suffered by respondents.

The trial court found that the installation was in violation of the fire ordinance, in that the tank was located less than three feet from the range. This was not a mere technical violation of the ordinance. On the contrary, it was a most serious violation thereof. If it appeared that the tank could not be placed in any other position, then the installation should not have been made.

In the case of *Pig'n Whistle Corp. v. Scenic Photo Pub. Co.,* 57 F. (2d) 354, the circuit court of appeals for the ninth circuit affirmed a judgment in favor of the plaintiff before the district court, in an action for damages to its property caused by a fire in a building in Seattle. The court held that violation of a municipal ordinance within the state of Washington amounts to violation of positive law and constitutes negligence. The appellant before the circuit court was held liable in damages to a tenant in another portion of the building, because of appellant's use of a ventilation shaft as a grease-fume duct, in violation of a city ordinance. The court also held that the failure of the city fire marshal to notify the appellant that the use of the ventilating shaft as a grease fume duct was illegal, did not exonerate the appellant from liability on account of the fire.

The case of *Moore v. Dresden Inv. Co.,* 162 Wash. 289, 298 Pac. 465, 77 A. L. R. 1258, is of interest in that connection.

The negligence of the persons who undertook to fill the oil tank attached to the wall back of the oil burner

was merely a concurring and not a superseding cause of the fire.

In 2 Restatement of the Law of Torts 1184, § 439, appears the following text:

"The Effect of Contributing Acts of Third Persons When the Actor's Negligence is Actively Operating.

"If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability."

The rule is again stated in the same volume, § 447, p. 1196:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Again, in § 449, p. 1202, the rule is stated as follows:

"Tortious or Criminal Acts the Probability of Which Makes the Actor's Conduct Negligent.

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby."

Appellants argue that, if Mrs. Leavens, because of her contributory negligence or that of her agents, could not recover damages from appellants, it should be held that respondents are also barred from such recovery.

The general rule is that a tenant is not the agent of the landlord, the latter not being deemed the principal of his tenant. 32 Am. Jur. 537, § 669.

In this connection, appellants cite the case of *Bulman Furniture Co. v. Schmuck*, 175 Ark. 442, 299 S. W. 765, 55 A. L. R. 1039. This case is not in point, because the person charged with contributory negligence was also the plaintiff seeking damages in the action.

The judgment of the superior court is correct, and it is accordingly affirmed.

JEFFERS, STEINERT, MALLERY, and HILL, JJ., concur.