## Taylor v. Commonwealth.

Sept. 27, 1940.

W. J. Baxter, Judge.

Ross, Ross & Bayer for appellant.

Hubert Meredith, Attorney General, and W. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Frank Taylor was convicted of voluntary manslaughter and sentenced to twenty-one years' imprisonment. Failure of the Court to instruct the jury properly and to admonish them as to the effect to be given certain testimony introduced by the Commonwealth in rebuttal are urged as reversible errors. It is also contended that appellant should have been granted a new trial because of newly discovered evidence.

The alleged defect in the instructions consisted of the grouping in one paragraph under one numeral of the facts which would authorize the jury to convict either of murder or manslaughter, and the omission of the words "upon provocation ordinarily calculated to excite passion beyond control" from that portion of the instruction which informed the jury that they should convict of manslaughter if they believed from the evidence that the homicide was committed "in sudden affray, or in sudden heat and passion without previous malice." It is true, that the omitted words are included in the instruction recommended in Hobson, Blain & Caldwell's work on Instructions to Juries, Section 742, and approved in Ball v. Commonwealth, 125 Ky. 601, 101

S. W. 956, 31 Ky. Law Rep. 188, and perhaps other cases; but it is also true that their omission from an instruction has been held by this Court not to be error. Thurman v. Commonwealth, 142 Ky. 347, 134 S. W. 174. There might be circumstances under which the incorporation of the words referred to in an instruction on manslaughter would aid an accused, but we are unable to perceive how the appellant could have been prejudiced by their omission as he claimed to have shot the deceased solely because he believed the deceased was about to shoot or cut him. In fact, there was so little provocation for the killing, according to appellant's own testimony, that he was fortunate in not having been convicted of murder after the jury had rejected his plea of self defense.

The testimony, the effect of which appellant claims should have been limited by an admonition from the Court, consisted of a statement by one Cap Powell that approximately sixteen months prior to the homicide the appellant had said to him that he didn't like George Vickers, the deceased, and that if Vickers ever made a crooked move around him it would be the last one he would ever make. Appellant had been asked if he had made the statement and had denied making it, and hence the testimony complained of was a contradiction. But it would have been equally admissible as substantive testimony, since it tended to show motive, and in view of that fact it was not necessary for the Court to instruct the jury that they could consider it only for the effect it might have on appellant's credibility. Castle v. Commonwealth, 228 Ky. 151, 14 S. W. (2d) 387; Lay v. Commonwealth, 217 Ky. 99, 288 S. W. 1047. Moreover, the record fails to disclose that appellant objected to the question propounded to Powell or to Powell's answer, or that appellant requested the Court to admonish the jury. Atkins v. Commonwealth, 224 Ky. 126, 5 S. W. (2d) 889; Turner v. Commonwealth, 185 Ky. 382, 215 S. W. 76.

The newly discovered evidence, according to an affidavit filed in support of the motion for a new trial, consisted of the testimony of Virgil Todd and Anna Todd, strangers to appellant, that about a week prior to the killing they had had a conversation with the deceased, Vickers, in which he had said that he had lived

on appellant's place and could not "get along" with him, and that he, Vickers, "thought that he was going to have to kill Frank Taylor when he lived on his place and that he (Vickers) intended to kill Frank Taylor yet." However, this testimony would have been merely cumulative since one Laura Bunch, a friend of appellant, had testified to substantially similar threats made by Vickers, and it is shown by appellant's affidavit that he knew nothing of the threat attributed to Vickers by the Todds, until after the trial. Moreover, it is conceded that Vickers was wholly unarmed at the time of the killing and the preponderance of the testimony indicates that appellant was at least equally to blame for the fatal encounter.

Some years previously Vickers had been appellant's tenant and appellant had terminated the tenancy because of non payment of rent. After that, when appellant would meet Vickers, the latter, according to appellant, would "put his hands in his pockets. I never said anything to him and he never spoke to me. I would go on by him. If he was sitting in a crowd talking to somebody he would draw back his fist and show them how he was going to do me." On the day of the homicide Vickers was sitting on the curb near the edge of the courthouse yard when appellant crossed the street and passed by him. According to appellant he was not looking for Vickers but—

"A. When I came over there he was sitting down and he drew back his fist like he was going to hit me. I said, 'what's the matter with you,' and he raised up like he was going to hit me and I shoved him back. He rushed back up and knocked my hat down over my eyes.

"Q. When he did that tell the jury if that was when you fired the shot there? A. Yes sir.

"Q. How many times did you shoot there? A. Twice.

"Q. Did you attempt to shoot any other shots there? A. No sir.

"Q. Why did you shoot him? A. Well, I believe he was going to shoot me or cut me."

808

On cross-examination appellant stated that when he passed Vickers he said to Vickers "what's the matter with you George" and that Vickers "started cussing him," that he, appellant, "went on and stepped back four or five steps away from him" whereupon Vickers "rushed right on up against me." According to appellant's testimony, Vickers "slapped at me with this hand when I shot him the second time, just before I shot him the second time," but according to the Commonwealth's testimony Vickers was several feet away and sinking from his first wound when the second shot was fired.

From all the testimony it is apparent that while appellant may have been afraid of Vickers, Vickers did nothing which would have justified appellant in killing him. Obviously appellant was not in danger of death or great bodily harm at the hands of Vickers at the time he shot him, and since Vickers' alleged threats to the Todds were not communicated to appellant, they could not have added to appellant's belief that he was in such danger. In any event, we are persuaded that the newly discovered evidence is not of such a nature that its introduction at another trial would be likely to bring about a different result.

Judgment affirmed.