[Civil No. 4447. Filed April 20, 1942.]

[124 Pac. (2d) 764.]

ELLA TAYLOR, Appellant, v. AMOS A. BETTS, WILSON T. WRIGHT, and WILLIAM M. COX, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Corporation, and FIDELITY & CASUALTY COMPANY OF NEW YORK, a Corporation, Appellees.

Messrs. Struckmeyer & Struckmeyer, and Mr. H. S. McCluskey, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Appellees Betts, Wright and Cox.

Messrs. Baker & Whitney, and Mr. Lawrence L. Howe, for Appellees Cox and Fidelity and Deposit Company of Maryland.

Mr. Riney B. Salmon, for Appellees Wright and Fidelity & Casualty Company of New York.

Messrs. Perry, Silverthorne & Johnson, for Appellee Fidelity and Deposit Company of Maryland.

Messrs. Stockton & Karam, for Appellee Betts.

LOCKWOOD, C. J.—Ella Taylor, plaintiff, on December 21, 1938, filed suit against Charles R. Howe and five other members and ex-members of the corporation commission and their bondsmen, defendants, alleging, in substance, that they had willfully and unlawfully issued certificates authorizing the Union Reserve Life Insurance Company, called the company, to transact business in the State of Arizona without its having first complied with the laws of Arizona, and had renewed such certificates from time to time, when said company, as a matter of fact, was insolvent, all of which facts defendants knew, or by reasonable diligence in the discharge of their official duties should have known, and that they had willfully concealed from the legislature and the general public the true

condition of said company; that plaintiff's husband, the insured, in 1933 had secured a life insurance policy from the company, relying upon the fact that defendants had issued certificates of authority to it to do business, and had died in 1937, but that the company, because of its insolvency, failed to pay said insurance policy according to its terms. It was further alleged that the insured would not have purchased the policy had he known the true condition of the company but would have purchased insurance from a solvent company authorized to do business in Arizona, and that he had no knowledge at any time of the company's true condition, but relied upon the acts of defendants in licensing it as an assurance that it was at all times solvent.

Defendants demurred to the complaint on several grounds, among them being that there was a defect of parties defendant and a misjoinder of parties defendant, and that the causes of action set up in the complaint were barred by the statute of limitations. The court sustained the demurrer both on the ground of misjoinder and statute of limitations, granting leave to plaintiff to amend, but she stood upon her complaint and judgment was rendered in favor of defendants.

The case came before us on appeal, together with another case in which Alice Bankhead was plaintiff and the defendants in the Taylor case were defendants, wherein an almost identical state of facts was set up, and the trial court made the same ruling as in the Taylor case. It was agreed that the same rules of law applied to both cases, and that the same judgment might be rendered in both of them by this court based upon one opinion. In the *Bankhead* v. *Howe case,* 56 Ariz. 257, 107 Pac. (2d) 198, 201, 131 A. L. R. 269, after setting up the facts, we said:

"We have held, in the case of *Button* v. *Nevin*, 44 Ariz. 247, 36 Pac. (2d) 568, that a state superintendent of banks who willfully and knowingly neglects or fails to perform his official duties is liable upon his bond for any damages suffered to parties through such neglect and failure, and that when he allows a bank to engage in business without having fulfilled the conditions specifically required by law, he and his bondsmen are liable for damages to any private parties sus tained through the subsequent insolvency of the bank. We think, in reason, the same rule applies if the officers charged with the supervision of insurance companies permit them to engage in the business of selling insurance in Arizona when such officers know, or with reasonable diligence in the discharge of their official duties should have known, that the companies have failed to comply with the specific prerequisites set up by the law as a condition to their engaging in business."

But we further held that there was an improper joinder of parties defendant for reasons set forth in the opinion, and stated:

"Since the demurrer was properly sustained on the ground of misjoinder and judgment rendered thereafter, it is unnecessary for us to consider the effect of the statutes of limitation and the other questions raised by the briefs not discussed herein. We expressly reserve them.

"The judgment of the lower court is affirmed."

Plaintiff, for some reason, had filed this suit, involving the same policy and based on the same allegations but with only three of the defendants in the previous case, on July 26, 1939. This case was held in abeyance in the trial court, awaiting decision of the case above referred to in this court, and after a decision was rendered by us, as aforesaid, the trial court in the instant case held that the judgment in the first case was a full and complete bar to the prosecution of this action, in that the matters and things complained of in the present action were *res*

*adjudicata,* and further, that this action was barred by subdivision 3 of section 29–201, Arizona Code 1939, and rendered judgment dismissing the complaint. Thereafter this appeal was taken.

The questions before us are (a) was the judgment in the previous case *res adjudicata* as to all the material issues raised in the present case, and (b) if not, does plaintiff's complaint show on its face that it is barred by subdivision 3, *supra.* We consider first the question of *res adjudicata.*

It will be noted that in affirming the judgment of the lower court in the previous case, we expressly reserved every question except those specifically decided, and mentioned the statute of limitations among those which were not decided. It is claimed by plaintiff that this left the question of the statute of limitations an open one and that the judgment was not *res adjudicata* as to it, but only as to the joinder of the parties defendant. It is the position of defendants that notwithstanding the language used in the opinion reserving this question, the fact that we affirmed the judgment of the lower court was necessarily an affirmance of its action in all respects and that the judgment is *res adjudicata* not only as to the issues which we expressly decided, but as to all issues which were or could have been litigated on the record in the trial court.

There can be no question that as a general matter a judgment is *res adjudicata* as to every point decided therein and also as to every point raised by the record which could have been decided, the presumption being that all such points have been decided in support of the judgment rendered. *Miller* v. *Kearnes,* 45 Ariz. 548, 46 Pac. (2d) 638; *Fischer* v. *Hammons,* 32 Ariz. 423, 259 Pac. 676. But it is contended by plaintiff that when the court which renders the judgment expressly states that it is not deciding

certain points which were raised and might have been decided, the judgment is not *res adjudicata* as to the points reserved. Both plaintiff and defendants agree that this is undoubtedly the law so far as a judgment rendered by a trial court is concerned, and that if it, in its judgment, reserves any points, they will not be considered as *res adjudicata* in another proceeding between the parties. *Ahlers* v. *Smiley,* 11 Cal. App. 343, 104 Pac. 997; *Faler* v. *Culver,* 94 Kan. 123, 146 Pac. 333; 34 C. J. 797 and cases cited.

But defendants contend that this rule does not apply when an appeal is taken from the judgment rendered by the trial court, and even though the Supreme Court, in rendering judgment, may expressly reserve certain points presented to and determined by the trial court, and bases affirmance or reversal of the judgment on other specified points alone, that the affirmance of the judgment affirms every ruling of the trial court, notwithstanding the express reservation by the Supreme Court.

Neither counsel has cited to us any case that is in point on the precise question involved, nor have we been able to find one by independent research. Whether this be because the question has never arisen previously in an appellate court, or whether it has been taken for granted that if a trial court has this power, certainly a higher court has the same, we do not know. But in all reason it would certainly appear that the greater includes the lesser, and that if this may be done by a trial court, much more may it be done by a court which has the power either to approve or overrule the decisions of the trial court in all respects. We hold, therefore, that with an appellate court, as with a trial court, when certain points of law arising in the case before it are expressly reserved, the judgment finally rendered is not *res adjudicata* on the questions reserved, and that those

questions may be raised and determined in a subsequent action without the defense of *res adjudicata* being applicable thereto.

We next consider whether the statute of limitations had run against the present action. The first question is, what statute is applicable thereto? There was some contention of plaintiff in her brief that it was subdivision 3 of section 29–203, Arizona Code 1939, which reads as follows:

"*Three-year limitation.*—There shall be commenced and prosecuted within three (3) years after the cause of action shall have accrued, and not afterward, the following actions: . . .

"3. For relief on the ground of fraud or mistake, which cause of action shall not be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

Defendants, however, insist that it is governed by the language of subdivision 3 of section 29–201, *supra,* which is in this language:

"*One-year limitation.*—There shall be commenced and prosecuted within one (1) year after the cause of action shall have accrued, and not afterward, the following actions: . . .

"3. Upon a liability created by statute, other than a penalty of forfeiture."

We think it is obvious that the liability of defendants, if any, was based upon the statute. The duty imposed upon them was purely a creature of statute and not of the common law. In the absence of statute, there could not possibly have been any liability for the acts complained of by plaintiff. It is true that plaintiff alleged that the particular acts on which she bases her claim for relief were done willfully, fraudulently and negligently, but the duty to perform these acts at all and the responsibility of defendants, in case the acts were done in the manner set forth in the complaint, arise out of the statute

and that only. The case of *Griffith* v. *State,* 41 Ariz. 517, 20 Pac. (2d) 289, 293, we think is decisive to the effect that the liability upon which this action was based was one created by statute, and that section 29–201, *supra,* is the one applicable to this case. Plaintiff, however, contends that, even assuming this to be true, the statute did not begin to run until her discovery of the facts which gave her a right of action, and that the same rule applies to the bondsmen. We went into this question in *Griffith* v. *State, supra,* and held as follows:

"The test, therefore, is not whether the action is in form one of fraud, but whether it seeks relief on account of fraud in the original transaction. This in substance is our decision in *Tom Reed Gold Mines Co.* v. *United Eastern Mining Co., supra* [39 Ariz. 533, 8 Pac. (2d) 449]. We hold, therefore, that fraudulent concealment by one occupying a position of trust tolls the running of the statute of limitations until the other party discovers or is put upon reasonable notice of the breach of trust, regardless of the form of the action. We think this rule is both reasonable and just. It would indeed be a grievous wrong if a public officer by the very concealment of his defalcations for a year could plead that the statute of limitations had run against a recovery. . . . "

It is true that in the latter case of *City of Bisbee* v. *Cochise County,* 52 Ariz. 1, 78 Pac. (2d) 982, we held that no statute of limitations ran aganst the state itself when suing in its own name or against any legal subdivision of the state, in the circumstances set up in the case just cited. This, however, does not do away with the general rule set forth in *Griffith* v. *State, supra,* and we reaffirm the ruling that no matter what the form of action is, if it is based on a fraudulent concealment by one occupying a position of trust, the statute does not begin to run until the other party discovers or is put upon reasonable notice of the breach of the trust. The question

then is, whether defendants occupied a position of trust towards plaintiff, within the meaning of the Griffith case, in regard to the alleged false and fraudulent representations.

It is urged by defendants that in *Tom Reed Gold Mines Co.* v. *United Eastern Mining Co.*, 39 Ariz. 533, 8 Pac. (2d) 449, the "position of trust" involved the conversion of property belonging to the plaintiff, and it is contended by defendants herein that the words "position of trust" refer only to cases when there is a direct or implied trust involving money or something valued in money belonging to a plaintiff which is taken from him by the defendant. We think this is entirely too narrow a limitation of the words quoted, and that they refer to any fiduciary relationship where the one party has violated a duty which he owes to another by reason of such relationship and thereby caused damage to that party, even though the party violating the relationship never had possession of any physical property covered by a trust.

The corporation commission was undoubtedly created, among other reasons, for the purpose of protecting the citizens of Arizona in their dealings with organizations of the type over which the commission has jurisdiction, and the duty imposed on it of seeing that insurance companies complied with certain provisions of the statute and were solvent as a condition of their being allowed to do business in Arizona, was certainly for the purpose of protecting the citizens of Arizona from insolvent and fraudulent insurance companies. Defendants, therefore, in their office as corporation commissioners occupied a position of trust as to the citizens of the entire state in the performance of the duties of ascertaining that insurance companies had complied with the law and were solvent before they were permitted

to do business in Arizona, and of investigating their continued solvency each year before the issuance of a new certificate. One of the reasons why this duty was given to the commission was because the ordinary citizen is not in a position to make the investigation for himself, while the commission was given not only the authority to make it, but the necessary funds to have it done. We hold, therefore, that under the Tom Reed and Griffith cases, *supra,* defendants occupied such a position towards plaintiff that the statute of limitations did not begin to run until she or the insured knew, or had reasonable grounds to know, that defendants had been derelict in their duty. When did such knowledge occur?

The complaint shows that the insured died on December 27, 1937, and that proof of his death was made to the company within less than sixty days thereafter. It also shows that on March 4, 1938 an action was brought against the company as an insolvent in the superior court of the state of Arizona, and its assets were taken over by the corporation commission for the purpose of liquidation. Plaintiff alleges that the actuary who investigated its condition first made a report to the court on September 18, 1938, finding that the company was insolvent and setting up in detail the facts which established such insolvency. It is her position that she neither knew nor was put on notice of defendants' derelictions until this report was filed. On the other hand, defendants claim that, even assuming there was any liability on their part, the latest act which could be held to have caused such liability was the renewal of the annual license of the company by them on April 1, 1937, and that the statute began to run then.

When plaintiff made her proof of death of her husband and the policy was not paid within a reasonable time, it might be held that it put her on

notice something was wrong with the company and, if so, it ·was her duty to investigate the situation. This may be too harsh a rule, but certainly when, in addition, on March 4, 1938, defendants herein filed a suit to have it declared insolvent and took possession of its assets pending determination of that suit, it was sufficient to put any reasonable person on inquiry as to whether it were insolvent on April 1, 1937. We think that plaintiff could not sit idly back until the final adjudication of insolvency and contend she was under no duty to make any investigation on her own account to determine whether defendants had violated their duty, and that such was the conduct of a reasonable person. We hold, therefore, that the statute of limitations, even giving it the most liberal construction in favor of plaintiff, began to run on March 4, 1938, and this action was not filed for over sixteen months thereafter.

The judgment of the lower court is, therefore, necessarily affirmed.

McALISTER, J., concurs.

ROSS, J., concurs in the result.