[No. 32795. *En Banc.* December 9, 1954.]

MABEL LINDQUIST, *Appellant,* v. BERNARD P. MULLEN *et al.,*
*Respondents.*[1]

*Carl F. Christophersen* and *A. L. Newbould,* for appellant.

*Eggerman, Rosling & Williams* and *Allan R. Carpenter,
Jr.,* for respondents.

MALLERY, J.—The trial court sustained defendant's demurrer. Plaintiff appeals from the judgment of dismissal.

Appellant contends the trial court erred in holding that her action was barred by the three-year statute of limitations. RCW 4.16.080(2) [*cf.* Rem. Rev. Stat. (Sup.), § 159].

The action is predicated upon the negligence of a physician, who will be referred to herein as if he were the sole

[1]Reported in 277 P. (2d) 724.

respondent.   On February 1, 1946, he performed operations upon appellant's gall bladder and hernia.   He left a surgical sponge in the hernia incision, which prevented it from healing properly for over seven years.   Appellant was treated by respondent several times during the next three and one-half years.   On October 2, 1949, the hernia incision broke open and drained continuously thereafter until March 31, 1953, at which time about two inches of gauze came out through the opening.   Thereupon, respondent again operated upon appellant and removed the sponge.   The incision then healed properly.

■   Appellant's action was commenced on July 9, 1953. This was more than three years after the operations on February 1, 1946.   Accordingly, appellant is barred from relying upon the negligent act of leaving the sponge in the hernia incision.   It is also more than three years after appellant's last treatment by respondent on October 12, 1949, so that she cannot rely upon the alleged negligent diagnosis and treatment subsequent to the operation.

■   We have held in malpractice cases that the cause of action accrues at the time of the wrongful act that caused the injury.   *Cornell v. Edsen,* 78 Wash. 662, 139 Pac. 602; *Jones v. Gregory,* 125 Wash. 46, 215 Pac. 63; *Smith v. Berkey,* 134 Wash. 348, 235 Pac. 793; and *McCoy v. Stevens,* 182 Wash. 55, 44 P. (2d) 797.   In the *McCoy* case, *supra,* this court quoted from *Cornell v. Edsen, supra,* as follows:

" 'But like any other action founded upon a breach of duty imposed either by law or contract, the action arises out of the breach, and the statute of limitations begins to run from the time of the breach and not from the time of its discovery.' "

Appellant seeks to avoid the effect of the rule upon the theory that the undiscovered negligence was *continuing* in nature, thus invoking the rule of *Theurer v. Condon,* 34 Wn. (2d) 448, 209 P. (2d) 311.   In that case, the action based upon the negligent installation of an oil burner, which caused a fire seven years later, was held not to be barred. We said:

"The *fire hazard* created by appellants' negligence was *continuous*, and, if the fire which resulted in this action was caused by the filling of the tank when the stove was hot, the bar of the statute of limitations, as to respondents' right of action, did not commence to run as to damages occasioned by the fire until the date of the fire." (Italics ours.)

Of course, negligence which does not produce harm is not actionable, and a cause of action cannot accrue until injury has been sustained. To be analogous to the instant case, the fire in that case must have started with the negligent act, and continued burning until the cause was discovered. In 34 Am. Jur. 126, Limitation of Actions, § 160, it is said:

"Where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date."

Appellant contends that the facts of *Doran v. Seattle*, 24 Wash. 182, 64 Pac. 230, are analogous to those in her case and support her theory of *continuing negligence*. That action was for trespass and nuisance resulting from the construction of a bulkhead in front of plaintiff's premises, which damaged plaintiff's house. The trespass and damage were continuing, and the court so held. An action in trespass is not predicated upon negligence. A continuing trespass is not tantamount to a continuing negligence. The case, therefore, does not establish the principle that every continuing injury implies a continuing negligence, the loose language in the case to the contrary notwithstanding.

Appellant alleged that the discovery of respondent's negligence was not made until March 31, 1953, when the incision opened and the presence of the gauze was discovered. The injury itself was, of course, known all the while, and the negligent act was not a continuing one. Appellant urges upon us a ruling that the cause of action accrued upon

the *discovery* of the negligence rather than the *occurrence of the injury*. It is not our prerogative so to do. We are concerned here with the interpretation of a statute. We are satisfied that had the legislature intended the principle of *discovery* to apply to tort cases based on negligence, it would have specifically said so, as it did with regard to *discovery* in fraud cases.

Appellant abandoned her other assignments of error, and, accordingly, they will not be discussed herein.

The judgment is affirmed.

SCHWELLENBACH, HILL, HAMLEY, DONWORTH, WEAVER, and OLSON, JJ., concur.

FINLEY, J. (dissenting)—The complaint, tested herein by demurrer, alleges that the defendant doctor performed surgery upon the plaintiff on February 1, 1946; that he did not exercise, in plaintiff's case, the reasonable and ordinary care and diligence ordinarily exercised by physicians and surgeons in the city of Seattle; that he negligently failed to exercise reasonable and ordinary care and diligence in applying the skill and learning of the ordinary physicians and surgeons practicing in Seattle; that he negligently and carelessly left a surgical sponge in plaintiff's body for a period of approximately seven years, during which time plaintiff was frequently ill, nauseated, and feverish; that plaintiff was examined several times by the defendant doctor; that, on October 2, 1949, the incision broke open by itself, and a considerable amount of pus came out; that, on October 3, 1949, and October 12, 1949, plaintiff was again examined by defendant doctor, who put clean dressings on the wound or incision, *and stated he thought it would drain out and heal after awhile*; that the incision continued to drain until March 31, 1953, when it opened and about two inches of gauze came out; *that, during all this time, the defendant doctor* neglected and negligently failed to properly examine plaintiff *to determine the cause of her condition, and also, negligently failed to properly treat her for her condition*; that plaintiff went to the office of the defendant

doctor on April 1, 1953, whereupon the latter operated again and removed the surgical sponge which had been left in plaintiff's body since February 1, 1946; that, after the removal of the sponge, the incision healed.

Before proceeding further, perhaps it should be emphasized quite clearly, in behalf of the defendant doctor, that the case is before us on a demurrer to the complaint. The result is that, at this stage in the litigation, the court is considering only the allegations of the plaintiff's complaint, and, under the applicable rule of legal procedure, the demurrer admits the truth of the plaintiff's allegations and all reasonable inferences therefrom. Furthermore, in this connection, perhaps it should be pointed out, in behalf of the defendant doctor, that, if a plaintiff prevails against a demurrer, the truth of the allegations of the complaint must still be proved by a preponderance of the evidence in a trial of the case on its merits before the plaintiff can win the lawsuit.

From my analysis of the allegations of the complaint, apparently *neither the patient nor the doctor knew about the sponge which had been left in the body of the patient* until after the operation on April 1, 1953. However, the trial court reasoned that the patient's cause of action accrued (a) at the time the sponge was left in her body (February 1, 1946), or (b) no later than October 12, 1949, when the doctor last examined her and failed to discover that the sponge was the cause of all the trouble. Thereupon, the trial court sustained the defendant doctor's demurrer to the complaint on the theory that the applicable statute of limitations had run against the plaintiff's cause of action.

The majority opinion affirms the trial court, citing *McCoy v. Stevens*, 182 Wash. 55, 44 P. (2d) 797, attempting to distinguish *Theurer v. Condon*, 34 Wn. (2d) 448, 209 P. (2d) 311, and *Doran v. Seattle*, 24 Wash. 182, 646 Pac. 230, and concluding with the statement:

"We are concerned here with the interpretation of a statute. We are satisfied that had the legislature intended the principle of *discovery* to apply to tort cases based on negligence, it would have specifically said so, as it did with regard to *discovery* in fraud cases."

It may be possible to agree with the majority opinion that the *Theurer* and *Doran* cases, *supra,* can be distinguished from the case at bar, considering particular factual differences. But that is as far as I can go in agreeing with the majority as to these cases. On the other hand, it seems to me they can safely be cited for the proposition that our statutes of limitation do not specifically provide or indicate *just when a cause of action accrues.* In fact, it is obvious without citation of cases that the question of when a cause of action accrues *is a matter for judicial determination,* and, in the final analysis, by this appellate court. In other words, as to the case at bar, the question has not been determined by the state legislature in its enactment of the applicable provisions of our statute of limitations.

Appellant makes a fairly convincing attempt to distinguish the *McCoy* case, *supra,* on two grounds: (1) that it involved no question of *continuing negligence*; (2) that the negligent act there involved was not concealed. However, appellant relies principally upon *Huysman v. Kirsch,* 6 Cal. (2d) 302, 57 P. (2d) 908, wherein the California court, in a malpractice case involving surgery in which a drainage tube had been improperly left in an abdominal incision, took the position (a) that the initial surgical operation was not completed until *discovery and removal* of the drainage tube; and further, (b) that the *negligence* of the doctor *was continuing in nature until the removal of the drainage tube*; and concluded, that the plaintiff's cause of action accrued subsequent to the date of the initial operation, that the statute of limitations did not start to run on the date of the initial operation, and that plaintiff's cause of action was not barred by the statute.

Perhaps the *McCoy* case, *supra,* can be distinguished as contended by appellant. If not, I think it should be overruled, and that we should be guided by reasoning and the results reached in (a) the *Huysman* case, *supra,* (b) *Burton v. Tribble,* 189 Ark. 58, 70 S. W. (2d) 503, (c) *Crossett Health Center v. Croswell,* 221 Ark. 874, 256 S. W. (2d) 548, and (d) *Morrison v. Acton,* 68 Ariz. 27, 198 P. (2d) 590. These cases will be discussed hereinafter.

In connection with the *Huysman* case, *supra,* it should be noted that in a subsequent case, *Greninger v. Fischer,* 81 Cal. App. (2d) 549, 184 P. (2d) 694, the California court said:

"Prior to 1936, the courts of this state applied a very strict rule in malpractice cases in reference to the statute of limitations. In that year the Supreme Court clarified and liberalized the applicable rules in the case of *Huysman v. Kirsch,* 6 Cal. 2d 302 [57 P. 2d 908]. As a result of that case, and the cases following it (*Trombley v. Kolts,* 29 Cal. App. 2d 699 [85 P. 2d 541]; *Petrucci v. Heidenreich,* 43 Cal. App. 2d 561 [111 P. 2d 421]; *Ehlen v. Burrows,* 51 Cal. App. 2d 141 [124 P. 2d 82]; *Faith v. Erhart,* 52 Cal. App. 2d 228 [126 P. 2d 151]) the rule is now settled that in those cases where the one-year statute is applicable (and not the three-year statute based on allegations of fraudulent concealment) *the statute does not start to run until the date of the discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act, or the date of the termination of the relationship of physician and patient.* The allegations here demonstrate that the action was filed within one year of discovery." (Italics mine.)

Relative to legislative intent, the majority opinion suggests that the state legislature took positive action to provide a specific exemption to the running of the statute of limitations in certain fraud cases. From this fact, it is assumed that the legislature, at that time, considered the possibility of taking similar action tolling the statute of limitations in other cases. The assumption or presumption is strictly a legal or judicial one. There is no tangible proof whatsoever to support it. Actually, the assumption is a dubious one and might well be characterized as a legal fiction. After making the mentioned assumption, the majority emphasizes the fact that the legislature actually took no action to toll the statute of limitations in malpractice cases. Coupling this latter fact of nonaction in malpractice cases with the first above-mentioned assumption, the majority opinion suggests indulgence in a second presumption to the effect that the legislative intent was that the statute was not to be tolled in malpractice cases. One assumption is pyramided upon another. We have disapproved of the

indulgence of trial courts and juries in this kind of reasoning. *State v. Willis*, 40 Wn. (2d) 909, 914, 246 P. (2d) 827.

Actually, as to the matter of legislative intent relative to our statutes of limitations, it seems just as logical to me, even more so, to assume that members of the legislature simply did not consider the question of tolling the statute of limitations in malpractice cases, and, if they had, that some specific provision would have been made relative to the matter, one way or the other. As a matter of fact, the legislature took no action as to malpractice cases, and no *assumption* is warranted one way or the other.

It has been pointed out heretofore that the state statute of limitations applicable to the case at bar contains no language specifically stating or determining *when a cause of action accrues*. The function of determining when a cause of action accrues would certainly seem to be *judicial* in nature, particularly in the absence of any statutory enactment by the legislature to the contrary. Thus, the court's problem is neither one of statutory interpretation nor of legislative intent. It involves a purely judicial function constituting a *judicial determination by this court* as to when plaintiff's cause of action accrued. Consequently, I cannot accept the technical, legal reasoning implicit in the application of the above-mentioned principle of statutory construction to defeat the cause of action of the plaintiff-patient, when, to do so, would deprive her of any possibility of a legal remedy for the *trespass to her person* of a prolonged and continuing nature.

Until the *discovery* of the sponge in her body, as a result of the belated but necessary and proper medical treatment on April 1, 1953 (that is, the second operation), the plaintiff did not know, and apparently the defendant doctor did not know, that the patient had any basis for a cause of action. This is giving the doctor the benefit of the doubt as to what he actually knew, but it is not conclusive as to what he was reasonably under a duty to know in line with the prevailing standard of medical care in his community. To say that the patient had a cause of action all the while,

*although no one knew about it or suspected it,* may meet some tests of legal logic or theory; but the result would hardly meet the tests of abstract, generally applicable, or lay standards of justice. This is a court of both law and *justice.* We should be guided accordingly in formulating a *judicial rule* here as to whether the plaintiff shall have a cause of action for the protection of her right to an award of damages for the harm and injury she has suffered. In cases such as here involved, justice is of course the most desirable objective inherent in the application of any legal concept, and, where the application of a legal concept so clearly results in injustice, *it is incumbent upon the courts* to examine the concept and its applicability *most carefully.*

Consider (a) the grievous harm suffered by Mrs. Lindquist for over seven years, (b) her reliance upon the reputation, competence, good judgment, and honesty of her doctor, particularly (c) his alleged assurance to her, after examining her and dressing the incision in October, 1949, that *the wound would drain and heal,* (d) Mrs. Lindquist's *right to rely* on this assurance, (e) the doctor's more than reasonable and adequate opportunities, allegedly on several occasions, to discover his patient's trouble and to rectify his negligence. With these aspects of the case in mind, it does seem quite clear that to deprive Mrs. Lindquist of all recourse to courts of *law and justice* relative to the harm done to her would constitute a strained result and a harsh one, not to be justified purely on the basis of legal technicalities.

Now, thinking in terms of the allegations of the complaint and the demurrer, what should the law be? What policy shall we formulate and establish here, judicially, in this, a malpractice case, on the facts here presented? What shall be the rule of the future governing doctor-patient relationships under circumstances such as here alleged? I think, as indicated by the reasoning of the California court in the *Huysman* and *Greninger* cases, *supra,* that it might be said that, on the facts alleged in the instant case, a cause of action accrued for the plaintiff when the operation was completed

on April 1, 1953; that is, when the sponge was *discovered and removed* by her doctor, the defendant. But the foregoing was not the only theory emphasized by the California court in sustaining the plaintiff's cause of action in the *Huysman* case, *supra*. The theory of *continuing negligence* was also emphasized, the reasoning being that the negligence of the doctor was continuing and effective in producing harm or injury to the patient during the entire period that the surgical tube remained in the patient's body. The trespass relative to the patient's body, the invasion of her right of personality, was continuing in nature. In other words, both *the tort and the cause of action* were progressive and continuing in nature.

This theory of the California court recalls to mind the decision and the reasoning of our own court in *Doran v. Seattle, supra*. In the *Doran* case, the city of Seattle had negligently constructed a bulkhead, which slipped or gave way, encroached upon the plaintiff's land, and was pressing against his house. The theory was advanced by the defense that the cause of action accrued to the plaintiff on the date the bulkhead was constructed, or when it first encroached upon his land and pressed against his house; that this had occurred more than two years prior to the filing of the complaint, and that the cause of action was barred by the statute of limitations. This bit of intriguing legal logic was rejected by both the trial court and the supreme court. Unfortunately, because of the style in which the opinion of the supreme court is written, it is somewhat difficult to quote specific language from the opinion itself to indicate the reasoning and the holding of the court. The headnote of the case, in my judgment, clearly indicates the reasoning and the result reached by the court in the *Doran* case, *supra*. It reads:

"Where a city in the improvement of a street constructed a bulkhead so negligently that it gradually gave way and encroached upon the premises of an adjoining lot owner to such an extent as to cause injury to a house situated thereon, *the trespass constitutes an injury in the nature of a continuing nuisance*, for which the party injured may recover

accrued damages as often as he brings action therefor, and is not restricted to a single action to recover present and prospective damages; and *hence the statute of limitations would not begin to run from the inception of the injury.*" (Italics mine.)

To me, it is significant that the headnote states, "the *trespass* constitutes an injury in the nature of a *continuing nuisance* . . . and hence the statute of limitations would not begin to run from the inception of the injury." If trespass was applicable to the invasion of *property rights* involved in the *Doran* case, a close parallel exists for the application of the concept to the instant case: in the *Doran* case, an *invasion* of property; in the instant case, an *invasion* of the right of personality by reason of the alleged negligence or the alleged substandard medical care of the doctor in leaving a surgical sponge in the body of his patient. The majority attempt to distinguish the *Doran* case by the explanation that trespass was there involved, while, in the instant case, we are concerned solely with negligence. In this particular connection, the argument could be reversed, suggesting that the *Doran* case did not involve trespass, but negligence—that is, negligence originally in the construction of the bulkhead, and *continuing negligence* at that. Actually, in the *Doran* opinion, the court combined negligence, trespass, and nuisance, and, after considering these concepts as a basis for legal liability, sustained the cause of action of the plaintiff land owner.

In the case at bar, the language of the complaint, if considered as a pleading of the facts involved, is sufficiently broad to embrace the theory of a continuing trespass, as well as a theory of negligence respecting the person of the plaintiff. Furthermore, the language of the complaint is sufficient to support an inference of (a) *continuing* negligence (*Huysman* case, *supra*), (b) negligent or fraudulent concealment (*Burton v. Tribble, supra*, discussed hereinafter), or (c) constructive fraud (*Morrison v. Acton, supra*, discussed hereinafter).

I cannot agree with the majority opinion that the complaint here on demurrer should be strictly construed and

limited in such a manner that it must be said that the plaintiff pleaded simple negligence as distinguished from the pleading of continuing negligence or trespass, as in the *Doran* case. This is particularly true if we remember, as we should, that this matter is now before us on *demurrer*, and that, under the circumstances, we are required to apply the rule that the allegations of the complaint and all reasonable inferences and intendments therefrom must be construed most favorably in behalf of the plaintiff. The latter principle requires no citation of authority.

It has been said the common-law forms of action have been abolished and are dead, but that they continue to haunt us from their graves. This aptly describes our problem in this appeal. If the plaintiff had clearly shaped her pleading in contract or negligence, it might well have been urged that it should have been framed in fraud, and vice versa. Actually, the plaintiff pleaded the facts. On demurrer, I re-emphasize, we must construe those facts in her favor. I am convinced that the language of the complaint is sufficiently broad to support the theory of a continuing trespass or assault (*Doran* case, *supra*), or the theory of continuing negligence (*Huysman* case, *supra*).

It may be thought that the consent of a patient to an operation negatives any possible implications of an assault or trespass to the person of the patient by the doctor. However, there is ample authority for the proposition that a doctor, who is authorized (by a patient's consent) to perform a particular operation, commits an *assault and battery* (trespass) upon the body of the patient, if an unauthorized operation is performed. *Physicians' & Dentists' Business Bureau v. Dray*, 8 Wn. (2d) 38, 111 P. (2d) 568; *Mohr v. Williams*, 95 Minn. 261, 104 N. W. 12; *Hively v. Higgs*, 120 Ore. 588, 253 Pac. 363. In *Rolater v. Strain*, 39 Okla. 572, 137 Pac. 86, patient and doctor agreed no bone was to be removed in an operation to correct an infection in patient's big toe. A small bone was removed. The Oklahoma court held that the removal of the bone exceeded the consent given and "was therefore unlawful and wrongful, and con-

stituted a trespass" upon her person. In the instant case, the patient, in consenting to the operation, consented to the insertion of the surgical sponge, and to the doing of all other things necessary for the *proper* performance of the operation. *But she did not consent to the leaving of the sponge in the incision in her body.* This exceeded the consent given, and, in the language of the *Rolater* case, *supra*, "was therefore unlawful and wrongful, and constituted a trespass to her person."

As mentioned above, the majority opinion in the case before us attempts to distinguish it from the *Doran* case, *supra*, saying that the latter involved trespass while the instant case involves negligence. I think the distinction is not well taken, particularly in view of the cases referred to herein holding that assault and trespass will lie when consent to an operation is exceeded. The *Doran* case, *supra*, approves the doctrine of continuing trespass. I am convinced that the doctrine or principle of the *Doran* case is applicable to the case at bar.

I do not wish to prolong this dissent unnecessarily, but some further reference should be made, as indicated heretofore, to *Burton v. Tribble, supra,* to *Crossett Health Center v. Croswell, supra,* and to *Morrison v. Acton, supra.*

In *Burton v. Tribble, supra,* a surgeon, in performing an operation, left a ball of gauze in plaintiff's abdomen, in 1926. The gauze was removed by another doctor in 1933. Plaintiff's action was against the first doctor. The statute of limitations was interposed as a defense. I quote at some length from the opinion wherein the Arkansas court said:

*"By his demurrer, appellee admits that he carelessly and negligently left remaining in appellant's abdominal cavity a ball of gauze 1½ inches in diameter, and continued to treat her thereafter without disclosing to her this unfortunate condition until more than three years had elapsed.* It is the well-established doctrine in this jurisdiction that a practicing physician and surgeon must exercise that degree of care, skill and learning ordinarily possessed and exercised by members of their profession in good standing in the community, and that they must exercise reasonable care in the

exercise of their skill while attending their patients. *Gray v. McDermott*, 188 Ark. 1.

"It cannot be said as a matter of law that appellee did not know that this foreign substance was left in appellant's abdominal cavity because, under the rule just stated, he was required to exercise ordinary care in the performance of said operation, and, when thus measured, might have known that the foreign substance was left remaining in appellant's body; if, in the exercise of ordinary care and skill, appellee knew that the foreign substance was left in appellant's abdominal cavity, it then and thereupon became his imperative duty to apprise appellant of this fact and not conceal it from her until the statute of limitation had attached. Appellee had the duty resting upon him not only to perform the operation with ordinary care and skill, but also to make immediate disclosure to appellant of any injury inflicted by or through his carelessness and negligence in the performance thereof, and his failure to make this disclosure was a continuing act of negligence.

"Appellee performed the operation upon appellant and knew, *or by the exercise of ordinary care might have known,* that the foreign substance was left remaining in her abdominal cavity. The information thus known to appellee was unknown to appellant, and the duty rested upon appellee to make known to appellant all facts within his knowledge in reference to the injury. The cause of action alleged in appellant's complaint grows out of a breach of duty which the law implies from the physician's and surgeon's employment in undertaking to perform the operation. It was a constant and daily obligation to use ordinary care and skill, and if, by omission or negligence, he has left a foreign substance within the walls of the abdominal cavity at the operation, it behooved him to afford timely relief. *The neglect of this duty imposed by a continuous obligation was a continuous and daily breach of the same.* *Gillette v. Tucker,* 67 Ohio 106, 65 N. E. 865, 93 Am. St. Rep. 639; *Bowers v. Santee,* 99 Ohio 361, 124 N. E. 238; *Groendal v. Westrate,* 171 Mich. 92, 137 N. W. 87, Ann. Cas. 1914B, 906.

"Our conclusion is therefore that appellee's acts of leaving the ball of gauze in appellant's abdominal cavity and his failure to apprise appellant thereof were such *fraudulent concealments and continuing acts of negligence as toll the statute of limitation until appellee performed his duty of removing the foreign substance or appellant learned or should have learned of its presence.*" (p. 60) (Italics mine.)

In the *Crossett* case, *supra*, the plaintiff patient sued defendant doctor for damages caused by a small piece of surgical wire left in plaintiff's intestine after an abdominal operation. Among other things, the statute of limitations was pleaded as a defense. The Arkansas court said (p. 876):

"We have said in effect that *fraudulent concealment* will toll the statute, although the case in which the language was used held that the action was barred. See *Steele v. Gann,* 197 Ark. 480, 143 S. W. 2d 520, 120 A. L. R. 754, decided under Act 135 of 1935, which allowed three years.

"Admittedly the operation in the case at bar was performed more than two years before suit, hence *the demurrer should have been sustained unless conduct amounting to fraudulent concealment prevented appellee, as a reasonable person,* from knowing that some of her continuing ills were traceable to appellant's failure to remove the wire.

"A comparatively modern case (1931) dealing with fraudulent concealment is *Schmucking v. Mayo*, 183 Minn. 37, 235 N. W. 633. There, as here, a demurrer was overruled and the defendant appealed. *The gist of the opinion is that when, through fraudulent concealment by the tort-feasor, a party against whom a cause of action exists prevents the person alleging injury from obtaining knowledge thereof, the statute of limitation will commence to run only from the time the cause of action is discovered or might have been discovered by the exercise of diligence.* 'This,' says the opinion of Chief Justice Wilson, 'is the rule apart from any statute.'

"*Burton v. Tribble,* 189 Ark. 58, 70 S. W. 2d 503, is to the point. There an abdominal operation was performed and the surgeon negligently left a ball of gauze within the cavity. In holding that an action brought seven years later was not barred as a matter of law, it was said:

" ' . . . Appellee's acts of leaving the ball of gauze in appellant's abdominal cavity and his failure to apprise appellant thereof were such fraudulent concealments and continuing acts of negligence as toll the statute of limitation until appellee performed his duty of removing the foreign substance or appellant learned or should have learned of its presence.' " (Italics mine.)

In the *Morrison* case, *supra*, a dentist, in removing an impacted wisdom tooth, left parts of broken dentistry instruments in the patient's jaw. Again, I quote at some con-

siderable length, this time from the opinion of the Arizona court, as follows (p. 34):

"The defendant here, as set out heretofore, knew or was chargeable with knowledge of the breaking of his instruments, and the great probability of their lying within the jaw and gums of the plaintiff. *Ernen v. Crofwell* [272 Mass. 172, 172 N. E. 73, 69 A. L. R. 1140], supra. Under the circumstances as shown by the record in this case, any conduct other than immediate action by the dentist either to remove the broken parts of his instruments or to alleviate the condition so as to prevent any harmful consequences, or full and frank disclosure to the patient of the true facts so as to enable the latter to take steps to correct the condition was fraudulent concealment amounting to legal or constructive fraud.

" ' . . . *Constructive fraud . . . may be defined as a breach of legal or equitable duty which, irrespective of the moral guilt or intent of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud . . .*' *Bell v. Bell*, 44 Ariz. 520, 39 P. 2d 629, 637.

"*Constructive fraud arises out of a fiduciary or confidential relationship. In re McDonnell's Estate* [65 Ariz. 248, 179 P. 2d 238], supra. For other Arizona cases on this point see *Harrison v. Roark*, 31 Ariz. 73, 250 P. 367; *Tom Reed G. M. Co. v. Mining Co.*, 39 Ariz. 533, 8 P. 2d 449. Also see 37 C. J. S., Fraud, § 2(c). *Such non-action and non-disclosure as was present here was a clear breach of the close confidential relationship which of necessity exists between dentist and patient.* We quote from *Acton v. Morrison*, supra [62 Ariz. 139, 155 P. 2d 784]:

" 'The relation existing between the plaintiff and defendant was confidential, calling for frank and truthful information from the dentist to his patient, and he, in keeping from his patient knowledge of the true condition of his jaw and teeth, violated a very sacred duty he owed him.'

"*The legal or constructive fraud which was present in this case continued in effect during the time subsequent to the operation upon plaintiff by Dr. Morrison up to and until the time the plaintiff became apprised of the true condition existing within his mouth, or by the exercise of reasonable diligence should have learned the cause of his illness. Until*

plaintiff's visit to Dr. Knower in 1941 he was unaware of the presence of the metal in his jaw. He had endeavored to ascertain the cause of his illness on many occasions, and he had consulted several medical doctors without success. Plaintiff's reliance upon the statements hereinbefore quoted, made to him by Dr. Morrison in 1935 and 1938 or 1939, in regard to the condition of his jaw constituted sufficient reason for not consulting another dentist in regard to any swelling which had been periodically reoccurring. No knowledge of the source of his infection could be imputed to the plaintiff from his receipt and possession of the x-rays taken by the defendant at this latter time, for he as an ordinary layman was devoid of any degree of the skill necessary to a proper reading and interpretation of these films. We quite agree with the view expressed by the trial court that the plaintiff was not required to incur further expense by going to other doctors to have the x-rays read.

"It cannot be said under these facts that the plaintiff-patient should be penalized for failing for even this long period of time to discover the true seat of his troubles. As this action was instituted by the plaintiff within six months after his discovery of the true facts which constituted his cause of action, the case falls within the rule set out in the former decision handed down in this case, and is not barred by the statute of limitations.

" ' " . . . We hold, therefore, that fraudulent concealment by one occupying a position of trust tolls the running of the statute of limitations until the other party discovers or is put upon reasonable notice of the breach of trust, regardless of the form of the action. We think this rule is both reasonable and just. . . ." ' *Acton v. Morrison, supra.* See *Taylor v. Betts,* 59 Ariz. 172, 124 P. 2d 764; 54 C. J. S., Limitations of Actions, § 206."

It may be suggested that a result different from that proposed by the majority would open the flood gates to litigation and in effect negative the statute of limitations in personal injury cases where injuries may actually or allegedly be discovered a number of years after the occurrence of an act of negligence. I do not share this view of alarm over the possible consequences of a result in this case different from that agreed upon by the majority. In the first place, this is a malpractice case. The decision of the court

in this matter can and should be limited to such cases. In the second place, the facts are unique—namely, a doctor allowed a surgical sponge to be placed in the body of his patient and to remain there for seven years, examining her and assuring her, during such period, that the incision would heal. The assault, trespass, negligence, or invasion of the patient's right of personality continued for the period of seven years (*Doran* and *Huysman* cases, *supra*). In this connection, the Arkansas court would emphasize *fraudulent concealment* (*Burton v. Tribble, supra*; *Crossett Health Center v. Croswell, supra*); and the Arizona court would emphasize constructive fraud or breach of a fiduciary or confidential relationship (*Morrison v. Acton, supra*).

As a practical matter, in reaching a decision in the case at bar, we are confronted with two conflicting matters of policy: (1) the policy of protecting a doctor against the danger of stale lawsuits involving the danger of missing witnesses and the danger of errors in memory in recollecting pertinent facts; (2) the policy of. allowing recourse to the courts to persons claiming injury because of (a) alleged acts of continuing negligence, trespass, or (b) alleged invasions of their right of personality, or (c) alleged acts of substandard medical care, amounting to fraudulent concealment or constructive fraud. I think that practically no layman and few, if any, reputable doctors would disagree that the policy of protecting the doctor from the danger of stale lawsuits should give way to the policy of protecting the patient, considering the substandard medical care, alleged or *indicated by the facts pleaded* in the malpractice case here concerned. Our · *Doran* case, *supra,* the California *Huysman* case, *supra,* the *Tribble* and *Croswell* cases, *supra,* and the *Morrison* case, *supra,* provide sound, respectable, convincing, and acceptable legal reasoning and theory to support the result which I believe should become the law of this jurisdiction in malpractice cases such as here involved. It is hardly open to question that the three state supreme courts in the latter-mentioned cases dispensed justice on a reasonable and logical basis. On the contrary, the result

reached in the majority opinion dispenses with justice and is too technical and unjust to become the law of this state.

The trial court should be reversed.

GRADY, C. J., concurs with FINLEY, J.

---

January 28, 1955. Petition for rehearing denied.