Victor M. HUNGERFORD, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17514.

United States Court of Appeals
Ninth Circuit.

Aug. 8, 1962.

Duniway, Circuit Judge, dissented.

Belli, Ashe & Garry and Jay Powell,
San Francisco, Cal., for appellant.

William H. Orrick, Jr., Asst. Atty.
Gen., Cecil F. Poole, U. S. Atty., John
G. Laughlin and Jerry C. Straus, Attys.,

Dept. of Justice, Washington, D. C., for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge.

Plaintiff appeals from a judgment dismissing this action for damages brought against the United States under the Federal Tort Claims Act (Act), 28 U.S.C. §§ 1346(b), 2674.

The action was dismissed before trial on two grounds: (1) the suit was not begun within two years after the alleged claim accrued and was therefore barred under 28 U.S.C. § 2401(b); and (2) the claim arose out of an alleged misrepresentation and, therefore, under 28 U.S.C. § 2680(h) is excepted from the provisions of 28 U.S.C. §§ 1346(b) and 2674. Appellant contests both of these rulings.

It is alleged in the complaint that Hungerford was wounded in combat in July, 1950, while serving with the United States Army in Korea. He subsequently experienced blackouts, unaccountable falls and severe head pains. In 1953, Hungerford was dishonorably discharged from the Army for going AWOL.

On January 15, 1957, Hungerford was admitted to Beacon Hill Veterans Administration Hospital, Seattle, Washington. Due to the negligent manner in which he was examined and in which diagnostic tests were performed at this hospital, and to the negligent failure to make necessary diagnostic tests, it was not discovered that Hungerford had organic brain damage which could be corrected by surgery. Instead, his condition was negligently diagnosed as psychosomatic and he was so advised. He was released from that hospital on February 12, 1957, without having received surgical treatment.

Upon being released from the Beacon Hill Hospital on February 12, 1957, Hungerford was several times arrested for passing forged checks, and was twice committed to California state hospitals for observation. On March 9, 1959, after passing more forged checks he was convicted, sentenced, and committed to California Medical Facility, Vacaville, California. While at Vacaville it was discovered that Hungerford had an organic injury to his brain of traumatic origin. His condition was treated by surgery and he was admitted to parole on April 4, 1960.

This action was commenced on July 11, 1960. Government liability was predicated on alleged negligence in examining Hungerford and diagnosing his condition while at the Government-operated Beacon Hill Hospital, in giving him incorrect information concerning his condition and in failing to provide available care and treatment which his actual condition required.

We first consider the district court ruling that the suit is barred under 28 U.S.C. § 2401(b). It is provided in this statute that a tort claim against the United States "shall be forever barred unless action is begun within two years after such claim accrues * * *."

The district court held that: (1) state law governs in determining when a claim "accrues" within the meaning of this statute; (2) under Washington law a claim based on malpractice accrues when injury resulting from negligence occurs, regardless of when the injury or negligence is discovered; (3) under the allegations of the complaint, injury resulting from negligence occurred on or before February 12, 1957, when Hungerford was released from the Beacon Hill Hospital; and (4) since this was more than two years prior to the bringing of this action on July 11, 1960, the claim is accordingly barred.

Appellant argues that federal rather than state law governs in determining when a claim "accrues." Under federal law, appellant contends, a claim based on malpractice accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice. It is alleged in the complaint that Hungerford did not discover, and in the exercise of reasonable diligence could not have discovered, the alleged acts of negligence

committed at the Beacon Hill Hospital until he was admitted to the Vacaville hospital on March 9, 1959. Hence appellant argues that this action, commenced on July 11, 1960, was timely.[1]

Appellee argues that the district court was correct in ruling that state law governs in determining when a claim "accrues." Alternatively appellee argues that even if federal law governs, that law is in accord with the Washington rule that a claim for malpractice accrues when injury resulting from negligence occurs, and that, under the allegations of the complaint, this happened at the Beacon Hill Hospital prior to Hungerford's release therefrom on February 12, 1957.

The circuits are divided on the question of whether state or federal law governs in determining when a claim "accrues" within the meaning of § 2401(b). In Tessier v. United States, 269 F.2d 305, the First Circuit held that state law governs. In Quinton v. United States, 304 F.2d 234, decided June 14, 1962, the Fifth Circuit held that federal law governs.

The view that state law governs is based on language to be found in §§ 1346 (b) and 2674 of the Act, to the effect that the Government will be liable only if a private person would, under the same circumstances, be liable under the law of the place where the act or omission occurred.[2]

It is reasoned that if, under the law of the place, the claim "accrues" when facts establishing liability come into existence, and the local statute of limitations runs from that time, the Government, under the statutory language just noted, is entitled to the benefit of the same local rule.

In our view, however the language of §§ 1346(b) and 2674, requiring that the Government be considered as if it were a private person, has reference only to the determination of substantive liability, and not to the jurisdictional question of whether the suit is out of time.

Instead of making applicable the varying statutes of limitations of the several states, the Federal Tort Claims Act provides for a two-year limitation as a jurisdictional condition precedent in all court cases in all states. This indicates to us that Congress wished to achieve uniformity with respect to the time limit on bringing such suits. But that policy would be frustrated if it was left to the law of each state to determine when that two-year period would begin to run. Thus, under the Washington law, assuming that injury was sustained while Hungerford was at the Beacon Hill Hospital, the two-year period would begin on February 12, 1957. Lindquist v. Mullen, 45 Wash.2d 675, 277 P.2d 724. But under California law it would not begin to run until sometime after Hungerford was admitted to the Vacaville hospital on March 9, 1959. Hurlimann v. Bank of America, 141 Cal.App.2d 801, 297 P.2d 682.

The view just expressed is developed at more length in the Fifth Circuit's recent opinion in Quinton v. United States, referred to above. In that opinion reference is also made to the opinions of the other courts which, although dealing with different facts and somewhat different questions of law, contain reasoning which is equally applicable to the question under discussion. We are in entire agreement with both the rationale

---

1. Appellant argues in the alternative that even if state law governs, the claim did not accrue until injury resulted from the negligent diagnosis at the Beacon Hill Hospital, and that some or all of the injury for which he seeks damages did not occur until after he was released from the Beacon Hill Hospital and within two years of the bringing of this action. Appellant advanced this argument for the first time in his reply brief.

2. The statutory language to which reference is made is the following:

28 U.S.C. § 1346(b)—" * * * under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 2674—" * * * in the same manner and to the same extent as a private individual under like circumstances * * *."

and conclusion reached in Quinton and conclude, as the Fifth Circuit did, that federal law governs in determining whether a claim has "accrued" within the meaning of the Act.

We are also in agreement with Quinton, for the reasons there stated, that under federal law a claim for malpractice accrues against the Government when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice. It need only be added that, as to this, the circuits are not divided. In the Tessier case, the First Circuit did not reach the question of when a claim "accrues" under federal law.

It is therefore our conclusion that, under the allegations of the complaint, this action is not barred by § 2401(b), and should not have been dismissed on that ground.

As before noted, the district court also held that the claim arose out of an alleged misrepresentation and therefore, under 28 U.S.C. § 2680(h), is excepted from the provisions of 28 U.S.C. §§ 1346(b) and 2674, subjecting the United States to damage suits based on certain torts claims.[3] The district court made this an alternative ground for dismissing the action.

Appellant contests this ruling, arguing in effect that in connection with his sojourn at the Beacon Hill Hospital the Government owed him at least three duties: (1) to make a careful examination of him; (2) to communicate to him a proper diagnosis based on that examination; and (3) to provide care and treatment, free from negligence, to meet his actual physical needs as disclosed by such proper examination.

Appellant contends that in view of the negligent manner in which the first of these duties was performed, as alleged in the complaint, the Government failed in its performance of the second and third duties. Thus, it is argued, even if the breach of the second duty (failure to provide a proper diagnosis) amounts to a misrepresentation under § 2680(h), the breaches of the first and third duties referred to above are not covered by that exception and resulted in the subsequent injuries for which appellant seeks recovery.[4]

In the district court the Government urged that the claim is barred by the misrepresentation exception. In this court, however, the Government takes the position that, in its view, since the claim is barred because not timely, " * * * the Court need not, we think, reach the misrepresentation question and we do not argue the point in this brief." [5]

A communicated diagnosis as to physical condition is a representation. See Hall v. United States, 10 Cir., 274 F.2d 69. An incorrect representation is a "misrepresentation" within the meaning of the statute, whether wilful or based upon negligence in ascertaining the facts represented. United States v. Neustadt, 366 U.S. 696, 702, 81 S.Ct. 1294, 6 L.Ed. 2d 614.

---

3. In pertinent part, § 2680(h) reads:
   "The provisions of this chapter and section 1346(b) of this title shall not apply to—
   *     *     *     *     *
   "(h) Any claim arising out of * * * misrepresentation, deceit, * * *."

4. The injuries alleged to have been sustained after Hungerford's release from the Beacon Hill Hospital as a result of the assertedly improper diagnosis were: " * * * pain, suffering, humiliation, mental aberrations, amnesia, confinements, loss of jobs, disgrace, shame, permanent brain damages, and other injuries and disabilities which are permanent."

5. While this may be tantamount to a confession of error as to this point, it is not the practice of this court to reverse on the sole ground that the appellee has confessed error. We wish to observe, however, that an appellee who does not intend to confess error ought to provide this court with any argument which can conscientiously be made with regard to all substantial points presented on appeal, notwithstanding the confidence it may have in another point which, if decided in appellee's favor, would be dispositive of the appeal.

But where the Government, on the basis of facts which it is chargeable with ascertaining by a proper examination, has a duty to perform in addition to the duty of disclosing those facts, negligence in the conduct of such examination which results in a failure to perform the additional duty is not covered by the § 2680 (h) exception.

Here, under the allegations of the complaint, the Government had not only the duty to communicate to Hungerford a correct diagnosis of his condition, but also to render proper care for the treatment of the physical condition from which he was actually suffering. Under the allegations of the complaint there was a failure to perform this latter duty because of the negligent manner in which the examination and diagnostic tests were made, or because of the failure to make tests which in the exercise of proper care should have been made.

■ We therefore hold that the alleged breach of duty and resulting injury set out in the complaint is not excepted from the application of the Federal Tort Claims Act, and the action should not have been dismissed on that ground.

■ Several pages of the complaint are devoted to a wholly irrelevant account of Hungerford's military exploits and other extraneous matters obviously included to gain sympathy and obtain publicity. Counsel must have known that inclusion in the complaint of such materials could serve no purpose other than to generate prejudice in favor of their client. The federal courts will not countenance such tactics, as counsel will doubtless learn when the pending motion to strike certain portions of the complaint comes before the district court upon the remand of this case.

The judgment is reversed and the cause is remanded for further proceedings.

DUNIWAY, Circuit Judge (dissenting).

I regret that I am unable to concur in the foregoing opinion. I do agree that the claim is not one arising out of "misrepresentation". (See 28 U.S.C. § 2680 (h).) But I think that the time when a "claim accrues" (28 U.S.C. § 2401(b)) is governed by state law and not, as the opinion indicates, by federal law. I base this conclusion upon the language which the Congress used in enacting the Federal Tort Claims Act. That Act says (28 U.S.C. § 2674):

"The United States shall be liable, respecting the provisions of this title relating to tort claims, *in the same manner and to the same extent as a private individual under like circumstances,* * * *". (Emphasis added)

It also provides (28 U.S.C. § 1346(b)) that the district courts have jurisdiction

"of civil actions on claims against the United States, for money damages, * * * for * * * personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*" (Emphasis added)

The foregoing language indicates an intention on the part of the Congress either to create a cause of action against the United States, or to waive the sovereign immunity of the United States against being sued upon a cause of action otherwise existing (for the purposes of this opinion I do not think it matters which), but to make the United States liable only to the extent that it would have been liable under state law if it were a private individual. This necessarily means that for acts of its agents in some states the United States will be liable when, in other states, it will not. It also means that in some cases the liability may be absolute, in others it may be for gross negligence, in still others, only for ordinary negligence, depending upon the state in which the act was committed.

Thus, I find no compelling force in the principal practical reason advanced for the conclusion of the majority in this case, namely, that the time of accrual of the cause of action would be different, depending upon the state in which the tort was committed.

The Congress, in enacting the Federal Tort Claims Act, must have known that such differences would occur. I do not think that the fact that Congress decided to eliminate one such difference, namely, the *period* of the statute of limitations, by providing for a uniform 2-year period from the time when the claim accrues, carries with it by necessary implication, or at all, the further conclusion that the words "after such claim accrues" are to be given a federal, rather than a state meaning. Congress could have said this, had it chosen to do so, but it did not.

The present decision is not "in accordance with the law of the place where the act or omission occurred" (28 U.S.C. § 1346(b)). It means that the United States is not liable "in the same manner and to the same extent as a private individual" (28 U.S.C. § 2674). Congress provided no specific standard for determining when the claim accrues under so-called federal law, but the fact that the Tort Claims Act throughout uses state law as the standard is to me a compelling reason for holding that the state law is to be applied in the construction of these words.

Indeed, so far as I am aware there is no general federal law as to when a claim accrues for purposes of the statute of limitations in tort cases, just as there is no general federal law of torts. This, I think, is why Congress provided that state law should apply; there is in every state a well developed law of torts. This is equally true so far as the accrual of a tort claim, for purposes of the statute of limitations, is concerned. (See, for example, 54 C.J.S. *Limitations of Actions* §§ 168–177, pp. 122–149.) Thus, under the congressional policy, there is a guide for the federal courts to follow. Under state law, the claim here asserted accrued more than two years before the action was filed, and it is therefore barred. (Lindquist v. Muller, 45 Wash.2d 675, 277 P.2d 724.) Under the majority opinion, there is no such guide; the federal courts are left free to roam at will among their own decisions and those of the states and choose whatever rule they like best for the case then before them. The fact that, for the purposes of this case, the decision in Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, is ready to hand, does not destroy the foregoing as a general proposition.

Thus, I agree with the decision of the First Circuit in Tessier v. United States, 1959, 269 F.2d 305, and I disagree with the decision, upon which the majority relies, in Quinton v. United States, 5 Cir., 1962, 304 F.2d 234.

I heartily agree with the court's comment upon the extraneous matter in the complaint in this case.

I would affirm.